## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BREAD FOR THE CITY,<br><br>    1525 7th Street, N.W.<br>    Washington, DC 20001,<br><br>    Plaintiff,<br><br>v.<br><br>THE DISTRICT OF COLUMBIA,<br><br>    400 6th Street, N.W.<br>    Washington, D.C. 20001,<br><br>    Defendant. | Civil Action No. 1:23-cv-01945-ACR |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF THE D.C. POLICE UNION'S MOTION TO INTERVENE

The Fraternal Order of Police, Metropolitan Police Department Labor Committee, D.C. Police Union ("D.C. Police Union") hereby submits this Memorandum of Points and Authorities in support of its Motion to Intervene and states as follows:

### I.
### Introduction

The D.C. Police Union is the exclusive representative of all police officers, sergeants, investigators, detectives, and detective sergeants of the D.C. Metropolitan Police Department ("MPD") and is comprised of approximately 3,400 members. The D.C. Police Union seeks to intervene on its own behalf and on behalf of its members because this case directly implicates the professional, reputational and economic interests of the D.C. Police Union and its members.

This case appears to be an effort by the Plaintiff, a not-for-profit organization that provides mental health services, to force the District to provide enhanced mental health services to its patrons to lessen the Plaintiff's burdens. The Plaintiff's arguments are largely political in nature and center on the Plaintiff's belief that the Defendant is violating the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 "by relying on police as the primary first responders for addressing mental health emergencies." Complaint, ECF No. 1 ("Compl.") at ¶ 4. The Plaintiff believes it has standing to bring this action because it has "divert[ed] substantial resources to handling crises at its facilities, impeding its ability to advance its core mission." *Id.* at ¶ 140. To that end, the Plaintiff asserts that it has lost an estimated "$3,250.00 annually." *Id.* at ¶ 190. The Plaintiff seeks extraordinary relief from this Court, including a declaratory judgment and a "permanent" injunction ordering the Defendant to "implement and operate an emergency response program that provides parity between physical health emergencies and mental health emergencies." *Id.* at 45-46.

The D.C. Police Union's members are central to the Plaintiff's legal and factual arguments. Indeed, the Plaintiff takes aim at members of the D.C. Police Union in the very first paragraph of the Complaint. *See, e.g., id.* at ¶ 1 (police officers are "the default first responders" . . . which "discriminates against people with mental health disabilities."). The Plaintiff asserts that, when responding to a "mental health emergency," members of the D.C. Police Union "frequently aggravate the emergency . . . ." *Id.* at ¶ 2. According to the Plaintiff, dispatching members of the D.C. Police Union to respond to certain emergencies is "unlawful" because doing so denies "equal access" to the District's emergency services. *Id.* at ¶ 3.

The Plaintiff continues, for example, claiming that members of the D.C. Police Union "will exacerbate, rather than resolve, mental health crises." *Id.* at ¶ 44. The Plaintiff further complains

2

that members of the D.C. Police Union "only" receive 40 hours of training on responding to mental health emergencies, an amount Plaintiff claims is inadequate, even though the Plaintiff's own staff only receive 6 hours of training. *Id.* at ¶¶ 47 and 189. Moreover, the Plaintiff includes numerous allegations from an unnamed, unidentified "MPD officer with 14 years of experience on the force." *See, e.g., id.* at ¶¶ 53, 55, 70.

The Plaintiff's theory advanced in the Complaint is fundamentally flawed and completely misapprehends the scope and substance of the Defendant's emergency services program, which is one of safely facilitating the transport of an individual to a care facility, not one of *rendering* care. The D.C. Police Union and its members are directly implicated and targeted in this action, and their safety and efficiency could be substantially impacted if this Court were to give any credence to the Plaintiff's theories. D.C. Police Union members will and should always remain the first responders in situations involving threats to safety, and as such, have a strong interest in ensuring the correct interpretation and application of the ADA and the Rehabilitation Act in this case.

## II.
## Legal Standard

### A. Intervention of Right

Fed. R. Civ. P. ("FRCP") Rule 24(a) establishes four (4) factors that a Court must consider in determining whether an individual or organization may intervene as of right:

> 1) the timeliness of the motion; 2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; 3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and 4) whether the applicant's interest is adequately represented by the existing parties.

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *see also* FRCP Rule 24(a)(2). Courts must permit an individual or an organization to intervene "as soon as it [becomes] clear that its interests would no longer be protected by the parties in the case. *Cameron v. EMW Women's*

3

*Surgical Center*, 142 S.Ct. 1002, 1012 (2022). An organization has the right to intervene on behalf of its members when

> a) its members would otherwise have standing [] in their own right; b) the interests it seeks to protect are germane to the organization's purpose; and c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Brady Campaign to Prevent Gun Violence v. Salazar*, No. 08-2243-CKK, 2009 WL 10695780 (D.D.C. Apr. 8, 2009) (holding that the National Rifle Association and the Mountain States Legal Foundation had a right to intervene in a lawsuit challenging a firearm regulation on behalf of their respective members).

## B. Permissive Intervention

Under FRCP Rule 24(b)(1)(B), an organization that timely moves to intervene may be permitted to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Timeliness "is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit . . . ." *United States v. Am. Telephone and Telegraph Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). The "common question of law or fact" requirement is satisfied when the proposed intervenor shows that "[t]he facts necessary to assert [its] claim are essentially the same facts as those necessary to establish [an existing party's] claim." *Me-Wuk Indian Comm. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 320 (D.D.C. 2007). The Court must also consider whether the proposed intervention will prejudice the existing parties or otherwise cause undue delay to the proceeding. FRCP Rule 24(b)(3); *see also EEOC v. National Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

## III.
## Argument

### A. The D.C. Police Union Has a Right to Intervene in this Action on Behalf of its Members.

The D.C. Police Union satisfies all four (4) necessary elements to intervene as of right in this matter under FRCP Rule 24(a)(2).

1. The D.C. Police Union's Motion is Timely.

As an initial matter, the D.C. Police Union has timely sought to intervene as of right, particularly given that this litigation is "in its infancy." *Butte County, California v. Hogen*, No. 08-519-HKK, 2008 WL 2410407, at * 2 (D.D.C., June 16, 2008). In determining the timeliness of a motion to intervene, courts look to factors such as whether a scheduling order has been issued; whether any motions have been filed; and whether the defendant has answered the complaint. *See Defenders of Wildlife v. U.S. Fish and Wildlife Service*, No. 19-cv-746-TSC, 2020 WL 129677765, at * 2 (D.D.C. Apr. 17, 2020) (finding motion to intervene was timely because it was filed before the defendant's answer was due and no briefing deadlines had been set); *cf. Roeder v. Islamic Republic Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (motion to intervene filed four (4) years after the complaint was untimely).

Here, the D.C. Police Union seeks to intervene within approximately 2 ½ months of when the lawsuit was filed and it first learned of the instant lawsuit through media reports. *See, e.g.*, Ellie Silverman, *ACLU sues D.C. over Police Response to Mental Health Crises*, Washington Post (July 6, 2023), available at https://www.washingtonpost.com/dc-md-va/2023/07/06/aclu-police-mental-health-emergencies-american-disabilities-act/. As of the time of filing, the Defendant has not yet filed an Answer to the Complaint or responsive pleading, although the docket reflects a filing deadline of September 26, 2023. Accordingly, the D.C. Police Union's Motion is timely.

2. <u>The D.C. Police Union has an Interest in this Action.</u>

This action centers on the Plaintiff's theory that the District of Columbia is administering its emergency response service in a manner that violates the ADA and the Rehabilitation Act. The Complaint targets and implicates members of the D.C. Police Union by asserting that members are "the default first responders for mental health emergencies." *See* Compl. at ¶ 1. The Plaintiff believes that the Defendant is violating the ADA "by relying on [members of the D.C. Police Union] as the primary first responders for addressing mental health emergencies" because is it somehow "unsafe" for police officers to do so. *Id.* at ¶¶ 5-6. The Plaintiff concludes that the Defendant's use of members of the D.C. Police Union violates the ADA and the Rehabilitation Act because its "handling of mental health emergencies discriminates against people with mental health disabilities." *Id.* at ¶ 18. The Plaintiff also alleges that members of the D.C. Police Union "only" receive 40 hours of training on responding to mental health emergencies, even though the Plaintiff's own staff only receive 6 hours of training. *Id.* at ¶¶ 47 and 189. Further, the Plaintiff asserts that the "methods" used by members of the D.C. Police Union to transport individuals to receive medical care "increase[s] the risk of trauma for the transported person and the risk of conflict." *Id.* at ¶ 66. The Plaintiff also asserts numerous allegations regarding the training and tactics used by members of the D.C. Police Union via an unnamed, unidentified "MPD officer with 14 years of experience." *See id.* at ¶ 53, 55, 70.

Members of the D.C. Police Union have a vested interest in this action because the Plaintiff's Complaint makes clear that members of the D.C. Police Union play an integral role in the Defendant's allegedly illegal method of providing emergency response services. Further, the relief sought by the Plaintiff directly implicates members' professional and financial interests as police officers and as employees of the District of Columbia. The D.C. Police Union has a unique

interest in ensuring that its members adhere to all applicable laws and regulations and, further, ensuring the health and safety of its members. Thus, the D.C. Police Union, as the exclusive representative of its members, is the proper party to intervene on their behalf. Throughout the country, courts regularly recognize the right of intervention of organizations, and labor unions in particular, on behalf of their members.

For example, in *Dorsett v. Nassau County*, the United States District Court for the Eastern District of New York permitted the intervention of the Police Benevolent Association of the Police Department of the County of Nassau ("PBA"). 283 F.R.D. 85 (E.D.N.Y. 2012). In that case, which was a tort claim brought by a private citizen against Nassau County, the PBA sought to intervene in order to ensure the confidentiality of a particular Internal Affairs report. *Id.* The Court permitted the intervention of the PBA under FRCP Rule 24(b), finding that the PBA "ha[d] demonstrated a legitimate interest in the non-disclosure of the [Internal Affairs] Report at issue." *Id.* at 91. Further, the Court found that the PBA should be permitted to intervene because its members "may be subject to disciplinary charges and are entitled to due process hearing . . . and their rights may under these proceedings may be impaired," depending on the disposition of the lawsuit. *Id.* The Court recognized that the PBA "has a significant interest in protecting the due process rights of its members." *Id.* at 92.

In the instant case, the Complaint is replete with allegations of officer misconduct or mistreatment of members of the public that amount to violations of federal law. Clearly, the Plaintiff will be required to present evidence that supports these allegations, and due to the nature of the claims made, could foreseeably result in members of the D.C. Police Union facing disciplinary or other adverse employment action. Moreover, by clouding the legal authority of members of the D.C. Police Union to perform their responsibilities, the Plaintiff's allegations and

any resolution of the claims will impact and could endanger the health, safety and welfare of members of the D.C. Police Union in performing their jobs.

The Plaintiff's incendiary allegations, particularly without rebuttal, context or an appropriate factual challenge, will leave D.C. Police Union members subject to retaliation or harassment directed at them for their required performance of duty. The Plaintiff's Complaint accuses members of the D.C. Police Union of various unlawful actions towards individuals in connection with their duties as police officers, which exposes them to potential civil or criminal liability as well as administrative discipline. The Plaintiff's Complaint does not name any individual officers, even though, as the *Dorsett* Court noted, a police officers' labor union has a "broader and legitimate interest to advance the professional interest of its members; preserve their health, safety, and welfare; and protect and advance their legal rights." *Id.* at 92. This is precisely what the D.C. Police Union seeks to do here as the exclusive representative of its members.

In *Ctr. for Bio. Diversity v. U.S. Dep't of the Interior*, the Court permitted the intervention of several organizations who represented oil and gas companies that participate in the federal permitting and leasing process in the relevant states at issue. No. 22-cv-1716-TSC, 2022 WL 16833967 at *3 (D.D.C. Nov. 9, 2022). The Court reasoned that these organizations represent and advocate for their members in the federal acquisition, permitting and leasing process, and that these rights were implicated in the lawsuit. *Id.* The Court found that the intervention of individual members was not required because the organizations' members' *own* leases and permits were not implicated in the lawsuit. *Id.* Accordingly, the Court permitted the associations to intervene as parties to protect the overall interests of their members. *Id.*; *see also Buffalo Field Campaign v. Haaland*, 570 F.Supp.3d 186, 195 (D.D.C. 2022) (holding that the plaintiff organizations "had the

requisite suitability of an associational action" because "naming an individual member would do nothing to facilitate an appropriate remedy").

Here, the D.C. Police Union seeks to intervene on behalf of its members to protect their professional and health and safety interests as police officers. The Plaintiff levies countless accusations against members of the D.C. Police Union, and even goes so far as to accuse members of the D.C. Police Union of endangering themselves and others by simply performing the duties assigned to them in response to emergency calls for service. These accusations directly implicate members' professional, financial and health and safety interests. Further, the relief sought by the Plaintiff would effectively re-write members' job responsibilities and completely change the way members undergo training for responding to emergencies, which will have a direct impact on their safety.

Additionally, the D.C. Police Union enjoys its *own* interests as the exclusive representative of all of the Defendant's police officers, sergeants, investigators, detectives, and detective sergeants within the MPD. These interests include bargaining with the employer, MPD, over changes to members' working conditions, including training, shifts, assignments and job responsibilities. The D.C. Police Union could see its ability to bargain and to have input on the subject of its members' duties in the context of responding to mental health calls for service drastically reduced in the face of an order from this Court or a settlement between the existing parties.

3. <u>Disposition of this Action will Impair and Impede the D.C. Police Union's Ability to Protect its Members' Interests.</u>

The D.C. Police Union, as a labor union and as the exclusive representative of its members, is uniquely situated such that "the disposition of the action may as a practical matter impair or

impede [its] ability to protect [its] interest." FRCP Rule 24(a)(2). The Plaintiff asks this Court to order extraordinary relief, including: a declaratory judgment that the Defendant is violating, *inter alia*, the Americans with Disabilities Act via its operation of its emergency response program; and a permanent and immediate injunction that the Defendant operate an emergency response program "that provides parity between physical health emergencies and mental health emergencies." Compl. at 45-46. This relief, if granted in whole or in part, would represent wholesale changes to the working conditions of the members of the D.C. Police Union. Members of the D.C. Police Union who are currently tasked with responding to emergencies will see their duties and responsibilities substantially altered if the Plaintiff is provided the relief it seeks.

Although carefully crafted to focus on D.C. Police Union members' actions, the Plaintiff's Complaint is a politically-motivated attempt to further defund the MPD. A resolution or settlement of the Plaintiff's claims would reduce police services as well as the number of police officers employed by the MPD, and membership in the D.C. Police Union would necessarily decrease. More importantly, the Plaintiff's "defund the police" goal is a fool's errand that will inevitably jeopardize the health and safety of members of the D.C. Police Union and the public. Even if mental health calls for service are not *intended* to require police, a police response is always necessary due to the inherent threat to the health and safety of the individual, those around them, and the responding officers. The consequence of any relief awarded in favor of the Plaintiff will be a shortage of police officers available to respond to these urgent calls for service. Eliminating D.C. Police Union members will not obviate their sworn duty to respond, but will instead place the remaining officers and members of the public at a far greater risk of harm.

Moreover, the D.C. Police Union, as the exclusive representative of police officers employed by the MPD, would see its own bargaining interests impaired by the disposition of this

action. As a labor organization, the D.C. Police Union would lose its ability to bargain over changes to the processes and procedures of a response to a mental health call for service with the MPD if certain conditions or restrictions are required by a judgment or agreed to through a settlement. Additionally, the disposition of this action would impede the interests of the D.C. Police Union in the Defendant's current emergency response service, which is the product of bargaining between the MPD and the D.C. Police Union. Any additional requirements imposed upon MPD or the Defendant by the disposition of this action would further impede the D.C. Police Union's ability to bargain and advocate on behalf of its members in future matters involving the police response to mental health calls for service.

4. <u>Neither the Plaintiff nor the Defendant will Adequately Represent the D.C. Police Union's Interests.</u>

Neither the Plaintiff nor the Defendant can or will adequately represent the interests of the D.C. Police Union and its membership in this action. The Plaintiff describes itself as a "not-for-profit organization that provides primary physical and behavioral healthcare services, legal services, food, clothing, and social services to under-resourced D.C. residents." Compl. at ¶ 13. Given the widespread animus towards D.C. Police Union members evident in the allegations levied against rank and file police officers in the Complaint, it is clear that the Plaintiff will not adequately represent the D.C. Police Union's interests. Indeed, the relief sought by the Plaintiff would significantly impede and negatively affect the working conditions and responsibilities of members of the D.C. Police Union.

The Defendant is the government for the District of Columbia, which is responsible for all official acts of its departments. The Defendant similarly cannot adequately represent the interests of members of the D.C. Police Union. "It is well-established that '[g]overnmental entities

11

generally cannot represent the 'more narrow and parochial [] interests' of a private party. *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 15 (D.D.C. 2010) (quoting *Fund for Animals v. Norton*, 322 F.3d 728, 737-38 (D.C. 2003)). In *Dimond v. District of Columbia*, the Court of Appeals for the District of Columbia permitted the intervention of a private insurance company in a lawsuit challenging the District's no-fault insurance law. 792 F.2d 179 (D.C. 1986). In doing so, the Court reasoned that

> [a] government entity such as the District of Columbia is charged by law with representing the public interest of its citizens. [The insurance company], on the other hand, is seeking to protect a more narrow and "parochial" financial interest not shared by the citizens of the District of Columbia. The District would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest.

*Id.* at 192-93.

The same is true here because the organizational interests of the D.C. Police Union and the professional, financial, and health and safety interests of its members are narrower than those of the District's general public interest. Indeed, the D.C. Police Union and the District are almost always adversaries in civil litigation and various administrative matters. As a labor organization whose members are employed by the District of Columbia, the D.C. Police Union and its membership have interests which are inherently opposed to those of the District of Columbia, which is the exclusive representative of MPD management. To the extent that the D.C. Police Union has any concerns regarding the health, safety, employment security or other job-related interest in this case, it cannot rely on it's management adversary to protect those interests. As such, neither the Defendant nor the Plaintiff will adequately represent the D.C. Police Union's interests in this matter. Accordingly, the D.C. Police Union has satisfied all of the required elements to intervene as of right in this matter.

### B. Alternatively, this Court should Permit the D.C. Police Union to Intervene on Behalf of its Members.

In the event this Court finds that the D.C. Police Union does not meet the requirements to intervene as of right, this Court should permit the D.C. Police Union to intervene pursuant to FRCP Rule 24(b)(1). The D.C. Police Union satisfies FRCP Rule 24(b)(1)(B)'s "common question of law or fact" requirement, has timely moved to intervene, and has shown that its intervention will not prejudice the parties or cause an unduly delay to these proceedings. *See General Motors Corp. v. Burns*, 50 F.R.D. 401 (D.Haw. 1970) (permitting intervention of national organization of automobile dealerships on behalf of its constituent dealerships in suit challenging state dealership licensing law because organization "ha[d] something to contribute to this lawsuit" and "[i]ts presence will not unduly complicate the case . . . ."). Moreover, the D.C. Police Union is the only entity that can adequately protect the rights of its members during the pendency of this litigation.

As previously described, this case is an effort by the Plaintiff to judicially defund a significant aspect of police responsibility and rewrite the Defendant's emergency response services. Members of the D.C. Police Union are the lynchpin of the Plaintiff's theory, as they are tasked with responding to 9-1-1 dispatches and emergencies whenever and wherever they occur. To that end, the D.C. Police Union seeks to intervene in this matter to defend against the Plaintiff's claims that the Defendant, by and through the actions of members of the D.C. Police Union, is somehow violating the ADA and the Rehabilitation Act or providing an improper or inadequate police response to calls for service. The D.C. Police Union's proposed defenses, and its unique experience with and knowledge of the operative facts are separate and distinct from those which may be advanced by the Defendant.

The relief sought by the Plaintiff, moreover, directly implicates the professional, financial and health and safety interests of members of the D.C. Police Union. A ruling in favor of the

Plaintiff would rewrite the training, procedure and substance of the Defendant's emergency response service which, in turn, would dramatically alter the working conditions, professional responsibilities and safety of members of the D.C. Police Union. *See Dep't of Energy v. Louisiana*, 690 F.2d 180, 187-88 (Temp. Emer. Ct. App. 1982) (affirming permissive intervention of oil companies in federal enforcement proceeding because oil companies' claims arose out of the same facts and questions of law, and would not prejudice or unduly delay the proceedings).

### C. Alternatively, this Court should Permit the D.C. Police Union to Intervene as an *Amicus*.

The D.C. Police Union enjoys a unique position as the exclusive representative of all rank and file sworn police officers employed by the MPD. As such, it is perfectly positioned to offer this Court with unique facts and arguments which neither the Plaintiff nor the Defendant can provide. *See Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (explaining that *amicus* should be allowed where "the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."); *see also Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 519 F.Supp.2d 89, 93 (D.D.C. 2007).

In *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, this Court denied the National Resources Defense Council's ("NRDC") motion for permissive intervention, but nonetheless permitted the NRDC to participate in the case as *amicus curiae*. The Court noted that the NRDC sought to "support the government's arguments" and also found that "the court may benefit from NRDC's input." *Id.*

Here, the D.C. Police Union similarly seeks to offer this Court useful and beneficial arguments regarding the legality, substance and procedure of the Defendant's emergency response

service from a perspective that can only be brought by the D.C. Police Union on behalf of its members, who are the individuals *actually* tasked with responding to emergencies in the District of Columbia. The D.C. Police Union is also uniquely positioned, in stark contrast to the parties, to inform the Court how any relief awarded to the Plaintiff would affect members of the D.C. Police Union and other aspects of the Defendant's emergency response service. Accordingly, the D.C. Police Union may be better positioned to provide the accurate data, context and narratives necessary to enable the Court to determine whether or not the Defendant is *actually* violating the ADA and the Rehabilitation Act. *See United States v. Microsoft Corp.*, No. CIV.A.98-1232, 2022 WL 319366 at * 2-3 (D.D.C. Feb. 28, 2002) (permitting telephone company to join as *amicus curiae* in telecom antitrust action so that it may "provide written suggestions to the Court, respond to submissions by the [Plaintiff] and [Defendant] . . . and present oral argument as determined to be appropriate by the Court.").

## IV.
## Conclusion

For the foregoing reasons, the D.C. Police Union should be permitted to intervene pursuant to FRCP Rule 24(a)(2), or in the alternative, pursuant to FRCP Rule 24(b)(1). The D.C. Police Union respectfully requests the Court enter the attached Order allowing the D.C. Police Union to intervene in this action as a defendant. Alternatively, the D.C. Police Union respectfully requests the Court enter an Order permitting the D.C. Police Union to file an *amicus* brief in this matter as to any disputed matters.

Respectfully submitted,

*/s/*

Anthony M. Conti (D.C. Bar No. 479152)
Daniel J. McCartin (D.C. Bar No. 976580)
Daniel M. Russo (D.C. Bar No. 90014853)
CONTI FENN LLC
36 South Charles Street, Suite 2501
Baltimore, Maryland 21201
(410) 837-6999
(410) 510-1647 (facsimile)
tony@contifenn.com
dan@contifenn.com
russo@contifenn.com

*Attorneys for Proposed-Intervenor
D.C. Police Union*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September, 2023, a copy of the foregoing was filed via the Court's CM/ECF system and served on:

Michael Perloff
Scott Michelman
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA
915 15th Street, N.W., 2nd Floor
Washington, D.C. 20005
(202) 601 – 4278
mperloff@acludc.org

Ashika Verriest
Brian Dimmick
Susan Mizner
Jenn Rolnick Brochetta
West Resendes
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, New York 10004
(240) 676 – 3240
averriest@aclu.org

Daniel L. Brown
Steven Hollman
Nikole Snyder
Calla N. Simeone
SHEPPARD, MULLIN, RICHTER
& HAMILTON, LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 747 – 1941
Dbrown@sheppardmullin.com

*Counsel for Plaintiff*

Pamela A. Disney
Brendan Russell Heath
OFFICE OF THE ATTORNEY GENERAL FOR
THE DISTRICT OF COLUMBIA
400 Sixth Street, N.W.

17

Suite 10100
Washington, D.C. 20001
(202) 442 – 9880
Pamela.disney@dc.gov
Brendan.heath@dc.gov

*Counsel for Defendant*

  /s/ _____
Anthony M. Conti (D.C. Bar No. 479152)