UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BREAD FOR THE CITY,

                Plaintiff,

v.

DISTRICT OF COLUMBIA,

                Defendant.

No. 1:23-cv-01945-ACR

**BREAD'S RESPONSE TO DEFENDANT'S NOTICE**

Plaintiff Bread for the City ("Bread") challenges Defendant's administration of an emergency response system that discriminates against people with mental health disabilities by denying them an equal opportunity to benefit from emergency services. D.C.'s emergency response system defaults to sending health professionals to handle physical health crises but armed police officers to handle mental health ones. Defendant argues that Bread lacks standing and fails to allege valid claims. Both arguments fail.

**I. Bread Has Standing.**

In characterizing Bread's injuries as self-inflicted, Defendant misreads the Complaint. The District's default police response for mental health crises undermines Bread's mission and causes Bread to shoulder the burden of responding to those crises in its facilities. Bread must thus "'devote significant resources to . . . counteract' the alleged discriminatory practices." *O.A. v. Trump*, 404 F. Supp. 3d 109, 142 (D.D.C. 2019).

Bread's mission of providing direct services to under-resourced D.C. residents does not encompass emergency healthcare, but clients frequently experience mental health crises at Bread's facilities. ECF 1 ¶¶ 13, 159. The Metropolitan Police Department (MPD)'s response to mental health crises exacerbates the symptoms of such crises and diminishes Bread's relationships with

its clients—making it harder for Bread to "provide [its] core representational services." *Cap. Area Immig. Rights Coal. v. Trump*, 471 F. Supp. 3d 25, 41 (D.D.C. 2020); *see* ECF 1 ¶¶ 150-58. Because the District's emergency response system for mental health crises is not timely and effective, *id.* ¶¶ 160-61, 165, and often harmful to people in crisis, *id.* ¶¶ 150-56, Bread expends significant resources to meet its clients' unaddressed healthcare needs. *Id.* ¶¶ 14, 162-93. Accordingly, it is D.C.'s policy that causes Bread to divert its resources; if D.C. administered a nondiscriminatory emergency response system, the diversion of resources would not occur. *Id.* ¶ 14. Bread's ability to conduct its core activities is thus closely connected to the challenged policy.

The District cites inapposite cases rejecting organizational standing when the plaintiff-organization alleged harm based on its choice to engage in educational initiatives, advocacy, or litigation against the challenged action. *See* ECF 17 at 2-3. Here, by contrast, Bread is spending resources directly to counteract the harm, not merely to oppose the policy. ECF 1 ¶¶ 14, 162-93.

The District's reliance on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is also misplaced. Unlike in *Lyons*, there is no guesswork about whether D.C.'s MPD-led response will harm Bread in the future; it is already happening and continues to happen. ECF 1 ¶¶ 13, 150-58.

**II. Bread Stated Americans with Disabilities Act (ADA) & Rehabilitation Act (RA) Claims.**

Defendant's three merits arguments misread the Complaint, the applicable law, or both.

*First*, Defendant errs in asserting that the only relevant comparison in this case is between the emergency *physical* health benefits provided to people with and without mental health disabilities. While federal disability law prohibits discrimination in providing such care, that is not what this case is about. Rather, Bread challenges a system that provides robust healthcare for crises arising from physical conditions but obviously ineffective and harmful responses for emergencies arising from mental health disabilities. *See* ECF 1 ¶¶ 44-74; 117-139.

The ADA and RA bar public entities from providing people with disabilities "a service that is not as effective in affording [them] equal opportunity . . . to gain the same benefit" as others. 28 C.F.R. §§ 35.130(b)(1)(iii); 45.51(b)(1)(iii). The service at issue here is D.C.'s emergency response program; its "benefit" is "timely and effective responses to emergencies," ECF 1 ¶ 77; *see also Cmntys. Actively Living Indep. & Free v. City of L.A.*, 2011 WL 4595993, *2 (C.D. Cal. 2011) (defining purpose of city's emergency preparedness program similarly); *Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 644 (S.D.N.Y. 2013) (same). By providing a worse form of that benefit in a context disproportionately affecting people with mental health disabilities, D.C. denies that population an equal opportunity "to gain the same benefit" as others. Equal access to emergency care in one setting does not excuse discrimination in another.

Accordingly, the U.S. DOJ found that Minneapolis and Louisville violated the ADA by relying on police as the primary first responders for mental health crises. Both investigations highlighted inequities between each city's handling of physical and mental health crises.[1]

*Second*, Bread does not, as D.C. argues, contend D.C. is liable for failing an abstract "standard of care." Accordingly, Bread did not raise a negligence claim. Instead, in addition to the discrimination theory discussed above, Bread argues that D.C. discriminates by implementing its emergency response program using "criteria or methods of administration" that "have the effect of defeating or substantially impairing accomplishment of the objectives of the. . . program" for people with disabilities. 28 C.F.R. §§ 35.130(b)(3), 45.51(b)(3). The ADA and RA proscribe such conduct. *See id.* Here, based on experts' observations and MPD's handling of mental health crises,

---

[1] *See* https://www.justice.gov/d9/2023-06/minneapolis_findings_report.pdf (at 57, 58); https://www.justice.gov/crt/case-document/file/1572951/download (at 59, 62).

Bread plausibly alleges that D.C.'s default reliance on MPD for mental health crises is so ineffective as to violate this mandate for people with mental health disabilities.  ECF 1 ¶¶ 44-74.

*Third*, Defendant is wrong that Bread seeks *new* programs.  Bread argues only that people with mental health disabilities deserve *equal access* to the District's emergency response program, a program Bread alleges exists, ECF 1 ¶ 77, and that D.C. recognizes exists, *see* ECF 17 at 1 (referencing D.C.'s "existing mental health response program").  The ADA and RA plainly allow claims for changes—even major ones—to existing programs.  *See Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1259-60 (D.C. Cir. 2008) (requiring modification of U.S. currency).

Indeed, courts have found that to ensure equal access, the ADA may mandate changes to the personnel who administer a program, akin to what Bread seeks in the form of changing D.C.'s default first responders for mental health emergencies.  *See, e.g., Van Velzor v. City of Burleson*, 43 F. Supp. 3d 746, 759 (N.D. Tex. 2014) (holding plaintiff stated ADA claim by alleging that city relied on less effective personnel to enforce disability-related traffic laws than it used to enforce other laws); *Tugg v. Towey*, 864 F. Supp. 1201, 1208 (S.D. Fla. 1994) (holding that affording Deaf people equal access to counseling program required hiring differently qualified counselors).

Moreover, the change Bread seeks—mental health professionals to respond to mental health emergencies—does not entail the creation of a new component of D.C.'s emergency response program but the *expansion of an existing one*.  D.C. already deploys mental health professionals to a small number of mental health crises; the problem is that this program component is so insufficiently funded, used, and integrated into the rest of the system, that it is ineffective.  *See* ECF 1 ¶ 88, 99-113.  Thus, Bread argues that providing equal access requires D.C. to make an existing program component both significantly more available and administered in a manner that does not defeat, or impair, the purpose of an emergency response program.

October 3, 2023

Respectfully submitted,

*/s/ Michael Perloff*
Michael Perloff (D.C. Bar No. 1601047)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street NW, 2nd Floor
Washington, D.C. 20005
(202) 716-1427
mperloff@acludc.org

Ashika Verriest (D.C. Bar No. 90001468)
Brian Dimmick (D.C. Bar No. 1013979)
Susan Mizner
Jenn Rolnick Borchetta
West Resendes
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(240) 676-3240
averriest@aclu.org

Daniel L. Brown (N.Y. Bar No. 2978559)
Steven Hollman (D.C. Bar No. 375658)
Nikole Snyder (D.C. Bar No. 1670948)
Calla N. Simeone (D.C. Bar No. 1766258)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave. NW, Ste. 100
Washington, D.C. 20006
Telephone: (202) 747-1941
dbrown@sheppardmullin.com
shollman@sheppardmullin.com
nsnyder@sheppardmullin.com
csimeone@sheppardmullin.com

*Counsel for Plaintiff*