# Exhibit 2



# GENERAL ORDER

**METROPOLITAN POLICE**

**DISTRICT OF COLUMBIA**

| Topic | | |
|---|---|---|
| Interacting with Mental Health Consumers | | |
| Topic | Series | Number |
| OPS | 308 | 04 |
| Effective Date | | |
| February 09, 2015 | | |
| Replaces: GO-OPS-308.04 (Processing of Persons Who May Suffer from Mental Illness), Effective Date September 22, 2000 | | |
| Rescinds: SO-11-05 (Juvenile Mental Health Services), Effective Date April 7, 2011 SO-10-07 (Crisis Intervention Officer Initiative), Effective Date September 13, 2010 TT-11-095-11 (Guarding Prisoners at the Comprehensive Psychiatric Emergency Program) | | |

| I. | Purpose | Page 1 |
|---|---|---|
| II. | Policy | Page 1 |
| III. | Definitions | Page 2 |
| IV. | Regulations | Page 2 |
| V. | Procedures | Page 3 |
| V.A. | Deployment of Crisis Intervention Officers | Page 3 |
| V.B. | Interaction with Adult Mental Health Consumers | Page 3 |
| V.C. | Voluntary and Non-voluntary Transport to Comprehensive Psychiatric Emergency Program (CPEP) | Page 5 |
| V.D. | Arrests | Page 7 |
| V.E. | Incidents at a Secure Mental Health Facility | Page 9 |
| V.F. | Referrals and Calls for Assistance from Other Agencies | Page 9 |
| V.G. | Guarding Prisoners at Comprehensive Psychiatric Emergency Program (CPEP)/Psychiatric Institute of Washington (PIW) | Page 11 |
| V.H. | Attempted Suicides | Page 11 |
| V.I. | Juveniles | Page 12 |
| VI. | Roles and Responsibilities | Page 13 |
| VII. | Cross Reference | Page 14 |
| VIII. | Attachments | Page 15 |

## I. PURPOSE

The purpose of this order is to establish the policy and procedures for the processing and disposition of suspected mental health consumers coming into contact with members of this Department.

## II. POLICY

The policy of the Metropolitan Police Department (MPD) is to handle calls for service involving suspected mental health consumers in a manner which reflects sensitivity to the needs and rights of the persons involved, and to work cooperatively with the Department of Behavioral Health (DBH) (formerly the Department of Mental Health) and other appropriate public and private institutions to provide citizens of the District of Columbia with effective mental health services.

### III. DEFINITIONS

For the purpose of this order, the following terms shall have the meanings designated:

1. Crisis Intervention Coordinator – Sworn member the rank of Captain designated by their District Commander to manage the day-to-day administrative and operational needs of the Crisis Intervention Officer Initiative within his or her assigned district.

2. Crisis Intervention Officer (CIO) – Sworn member who has successfully completed the Department's crisis intervention training course.

3. Field Search – See GO-PCA-502.01 (Transportation of Prisoners) for the definition.

4. Juvenile – Person under 18 years of age.

5. Mental Health Consumer – Person who a member reasonably believes is suffering from a mental illness.

6. Mental Illness – Disorder in thought or mood so substantial that it impairs judgment, behavior, perception of reality, or the ability to cope with the ordinary demands of life.

7. Professional Resources – Resources available to the MPD including mental health professionals, emergency medical facilities, psychiatric institutes, and detoxification centers that accept Department referrals.

8. Restraining Devices – Equipment used to restrain the movement of a subject (e.g., handcuffs, flex-cuffs, leg restraints, restraint straps).

9. Voluntary and Involuntary Detentions – Provisions within the D.C. Official Code (Title 21, Chapter 5) which the MPD uses for detaining persons requiring professional psychological intervention.

### IV. REGULATIONS

A. Members shall transport mental health consumers who are in MPD custody and who complain of illness or injury to a hospital in accordance with GO-PCA-502.07 (Medical Treatment and Hospitalization for Prisoners).

B. If a Form FD-12 (Application for Emergency Hospitalization by a Physician, Officer or Agent of the D.C. Department of Human Services or

an Officer Authorized to Make Arrests) (Attachment A) is initiated by another agency, that agency will be responsible for remaining with the mental health consumer.

C. Members shall use handcuffs on **all** mental health consumers, regardless of age, who are being transported for mental health services in an MPD vehicle. Handcuffs and any other restraining devices shall be used in accordance with GO-PCA-502.01 (Transportation and Searches of Prisoners).

D. Members shall not transport persons to the Comprehensive Psychiatric Emergency Program (CPEP) who appear to be intoxicated or under the influence of drugs but who do **not** appear to be mental health consumers. Members shall handle intoxicated persons in accordance with GO-PCA-501.03 (Handling Intoxicated Persons) and shall contact the D.C. Fire and Emergency Medical Services (FEMS) if the person needs medical attention.

E. Members who are trained to be a CIO shall not receive additional compensation.

## V. PROCEDURES

A. Deployment of Crisis Intervention Officers

1. Members trained as CIOs shall go in service at the beginning of each shift and advise the dispatcher and i-Mobile, if applicable, that they are Crisis Intervention Officer trained.

2. Office of Unified Communication (OUC) dispatchers may refer to the list of trained members for dispatch or may request a CIO over the radio for assignment.

3. CIOs shall respond to calls or incidents involving confirmed or suspected mental health consumers in crisis when available.

4. CIOs may handle calls for service outside their assigned patrol district with the approval of the District Watch Commander and/or the Field Commander.

B. Interaction with Adult Mental Health Consumers

1. The first member on the scene involving an interaction with a mental health consumer shall:

   a. When possible, establish verbal control.

  b. Determine the facts and circumstances of the incident.

  c. If not a CIO:

    (1) Determine if one is needed.

    (2) If a CIO is not needed or not available, the member shall handle the incident in accordance with this order and applicable MPD policies and procedures and complete the PD Form 251 C (Crisis Intervention Tracking Form) (Attachment B)

NOTE: Mental health consumers may display conduct that is irrational, unpredictable, or threatening. They may not receive or comprehend commands or other forms of communication in the manner that members may expect. They often do not respond to authoritative persons or the display of force.

2. If the member is not crisis intervention trained and determines a CIO is needed, he/she shall request through the OUC that a CIO respond.

  a. Should a CIO be available to respond, the CIO shall:

    (1) Assist the first member on the scene with conducting a dialogue with the mental health consumer.

    (2) Assume responsibility for the assignment and complete all applicable reports, including but not limited to the PD Form 251-C.

  b. If a CIO is not available, the first member on the scene shall handle the incident in accordance with this order and applicable MPD policies and procedures and complete the PD Form 251-C.

3. In determining the most appropriate action to take members shall:

  a. Consider the information provided by professional resource persons, family members, friends, and the reporting person.

  b. Consider the use of professional or medical crisis intervention personnel, if available, when making a detention decision.

  c. Determine what, if any, on-going threat potential the subject poses to himself or herself, or others.

        d.    This threat potential may necessitate an involuntary detention procedure rather than allowing the subject to go with the family or friends for voluntary treatment.

    4.    Members may contact the DBH Mobile Crisis Service at 1-888-793-4357 (1-888-7-WE HELP) for guidance.

C.    Voluntary and Non-voluntary Transport to Comprehensive Psychiatric Emergency Program (CPEP)

    1.    If a member believes an interaction with a mental health consumer has escalated to the point where death or serious bodily injury is imminent, the member shall:

        a.    Take appropriate police action.

        b.    Contact an official for barricade/hostage situations where Emergency Response Team response may be appropriate.

    2.    In all other cases, a member who reasonably believes that an **adult** individual is mentally ill and poses a danger or threat of danger to himself or herself or others, shall transport the individual without delay to the Comprehensive Psychiatric Emergency Program (CPEP) located in Building 14 on the grounds of the former DC General Hospital.

    3.    All adults being transported to CPEP for mental observation in a Department vehicle shall be field searched by the member and handcuffed prior to being placed in a vehicle.

        a.    Weapons, or other items which could be used to inflict injury, shall be removed and properly recorded on the property book at the assigned organization element of the transporting member.

        b.    All other personal property of the person being transported shall accompany the person and turned over to CPEP staff.

    4.    If an adult who shows no signs of being a danger to himself or herself or others voluntarily agrees to go to CPEP:

        a.    An adult family member should first arrange transportation. If the family member can not arrange transportation, the transportation can be by a Department vehicle. If the individual is injured, transportation should be by ambulance to the closest appropriate hospital. Members may determine

whether handcuffs and other restraining devices are appropriate in the event that they ride in the ambulance.

    b. Prepare a field report with the classification "Sick Person to the Hospital".

5. If the adult does **not** voluntarily agree to go to CPEP, the member shall:

    a. Transport the adult mental health consumer, using handcuffs and, if necessary, additional restraining devices, to CPEP on the grounds of the former DC General Hospital, Building 14.

    b. If the suspected mental health consumer is violent, but not under arrest, request a transport wagon with two members to assist in transporting the individual.

    c. Execute a Form FD-12 outlining the circumstances for the detention and provide this form to the staff of the facility.

        (1) The information entered on the Form FD-12 shall describe the specific behaviors or statements of the mental health consumer which led the member initiating the emergency hospitalization to believe that the person was in imminent danger of harming himself or herself or others.

        (2) Members may consult with the staff at CPEP for assistance with completing the Form FD-12.

        (3) Members initiating an FD-12 shall be responsible for transporting the mental health consumer's property.

            (a) In the event that the mental health consumer's property would be classified as an encampment, the member shall contact the Office of Neighborhood Engagement through the Mayor's Command Center to handle the property.

            (b) In all cases, when a FD-12 is initiated by another agency, the initiating agency will be responsible for transporting the property. In the event that the agency member does not have access to a vehicle, the MPD member shall transport the agency member who will maintain responsibility for the property.

        d.    Prepare a field report with the classification "Sick Person to the Hospital".

        e.    Upon obtaining a Central Complaint Number (CCN) for the field report, provide the Teletype Unit with the name of the mental health consumer.

D.    Arrests

    1.    In determining whether an arrest is warranted for a mental health consumer, the member shall use reasonable judgment in making a determination of probable cause. Members shall take into account any factors that mitigate against making an arrest.

    2.    The member shall obtain approval from the Watch Commander for detaining the adult in lieu of arrest.

    3.    When transporting an adult suspect who is a mental health consumer, members shall:

        a.    In addition to the requirements of this order, transport suspected mental health consumers under arrest in accordance with GO-PCA-502.01 (Transportation and Searches of Prisoners).

        b.    Use caution when transporting suspected mental health consumers due to the potential threat of destructive and/or dangerous behavior to themselves and/or the members.

        c.    Notify the receiving agency of any known medical problems and potential security hazards the prisoner presents.

        d.    Accompany subjects who are restrained and transported by ambulance to the treatment facility if requested by FEMS or the subject is violent or under arrest.

    4.    When a member arrests a suspected mental health consumer and:

        a.    Court is **not** in session or the person is a threat, the arresting member shall:

            (1)    Prepare a field report citing the appropriate offense and document that the arrested person was transported for mental observation to CPEP.

  (2) Prepare a Form FD-12 and attach a copy to the field report.

  (3) Indicate on the PD Form 163 and Van Sheet, "AT-RISK/Mental Health Consumer".

  (4) Obtain from their watch commander a PD Form 311 (Notification of Intent to Discharge).

    NOTE: This form requests that the watch commander be notified by CPEP prior to the release of a person against whom criminal charges have been placed. This will permit the arresting unit to respond and take custody of the person if the case has not yet been presented to the court.

  (5) Should it be determined by the CPEP staff that there is no cause to hold the arrested person for further evaluation, transport the arrested person, using handcuffs and, if necessary, additional restraining devices to the Central Cellblock for detention and presentment to court.

  (6) Should the arrested person be held at the CPEP for further evaluation, respond to court on the next court business day and present the case in the same manner as other hospitalized police prisoners.

    NOTE: The court will determine whether the arrested person should be detained for the purpose of evaluating mental competency.

 b. When court is in session and the person is **not** a threat, the arresting member shall:

  (1) Prepare a field report citing the appropriate offense.

  (2) Ensure the arrested person is booked and processed at the Central Cellblock, prior to presentment at court.

    NOTE: The court will determine the need for the arrested person to undergo mental observation prior to case adjudication. No Form FD-12 is required.

- E. Incidents at a Secure Mental Health Facility

    1. Members who are required to enter secure areas of mental health facilities shall secure their firearms in the provided gun lockers and retain the locker key until retrieving their weapon unless exigent circumstances or other factors necessitate that they keep their weapons with them.

    2. Members only needing to interview facility personnel may conduct such interviews in a non-secure area on the facility grounds, and shall not be required to surrender their firearm.

    3. Members responding to the facility for complaints of criminal offenses shall conduct a preliminary investigation and complete a field report as required.

    4. Members shall not normally remove patients from the facility during the preliminary investigation.

    5. The decision to arrest a patient and remove him or her from the facility shall be made by the member's watch commander.

    6. Members serving warrants on patients at a secure mental health facility shall:

        a. Serve such warrants during a time of day that would allow for the processing and arraignment of the individual so the Department is not required to house or hold the individual overnight.

        b. Contact the facility administrator prior to responding to the facility to ensure the patient has received any required medication and is prepared for removal prior to the member's arrival.

- F. Referrals and Calls for Assistance from Other Agencies

    1. Assisting Agents of the DBH

        a. Members dispatched to assist the DBH agents shall remain with the agents until such time:

            (1) The DBH agent states that he or she no longer needs assistance;

    (2) The member determines that the person being interviewed presents no danger to the agents, at which time the member shall return to service; or

    (3) The member determines that the person being interviewed requires an emergency, psychiatric evaluation, and the member is needed to assist in the transportation to the CPEP.

   <u>NOTE</u>: Individuals who present no danger should be transported by the DBH agent.

  b. When transport services are provided by MPD, from a location at which a DBH agent is present:

   (1) The DBH agent will be responsible for:

    (a) Executing a Superior Court Form FD (12) – 826

    (b) Meeting the member on-site at CPEP or the hospital.

    (c) Transporting the mental health consumer's property unless the DBH agent does not have access to a vehicle in which case the member shall transport the DBH agent and the property. In such cases, the DBH agent will maintain responsibility for the property.

   (2) Members shall:

    (a) Complete a field report with the classification "Sick Person to the Hospital".

    (b) Use handcuffs and, if necessary, additional restraining devices if necessary on the metal health consumer.

  c. Members shall notify the Teletype Unit of the person's name and the location from which removed.

2. When responding to a request for assistance from an agency other than DBH (e.g., D.C. Public Schools), members shall:

  a. Coordinate with the CIO, if necessary.

   b. Notify the DBH Mobile Crisis Service at 1-888-793-4357 (1-888-7-WE HELP) and/or Child and Adolescent Mobile Psychiatric Services (ChAMPS).

 G. Guarding Prisoners at Comprehensive Psychiatric Emergency Program (CPEP)/Psychiatric Institute of Washington (PIW)

  1. Members **shall** guard prisoners at CPEP/PIW who meet the following criteria:

   a. Prisoners charged with violent felony crimes against persons.

   b. Prisoners charged with domestic violence.

   c. Prisoners arrested on a bench warrant.

  2. Members **shall not** guard prisoners at CPEP/PIW who meet the following criteria:

   a. Prisoners charged with a misdemeanor offense or traffic offense.

   b. Prisoners charged with a felony property crime.

  3. Members with questions concerning guarding a prisoner at CPEP/PIW who has been charged with an offense other than those listed in Part V.G.1. of this order shall contact their watch commander for further guidance.

  4. Members shall guard prisoners in accordance with GO-PCA-502.07 (Medical Treatment and Hospitalization of Prisoners).

  5. Watch Commanders shall complete a PD Form 311 (Hospital Discharge and Psychiatric Review Notice) (Attachment C) when a prisoner is admitted to CPEP/PIW but is **not** placed under guard.

 H. Attempted Suicides

  1. Members responding to the scene of an attempted suicide shall safeguard any medicine bottles or containers that appear to have been taken internally by the patient.

  2. Members shall turn over any evidence to the investigator responding to the hospital or to the member handling the case.

I. Juveniles

1. Members who encounter a juvenile who poses a threat or danger to himself or herself or others due to limited mental capacity shall:

    a. Notify the juvenile's parent or legal guardian and document the notification in the narrative of the field report;

    b. Notify Child and Adolescent Mobile Psychiatric Service (ChAMPS); and

    NOTE: ChAMPS is a mobile emergency service for children experiencing an emotional or mental health crisis in the District of Columbia. ChAMPS provides in-home assistance when appropriate or arranges temporary placement in a respite home or other emergency setting as needed. ChAMPS also will assess whether a child's behavior poses a danger, requiring possible psychiatric inpatient hospitalization.

    c. Request an ambulance to transport the juvenile to the closest mental health facility:

        (1) The Psychiatric Institute of Washington (PIW), at 4228 Wisconsin Avenue, N.W.; or

        (2) The Children's National Medical Center (CNMC) Emergency Room, at 111 Michigan Avenue, N.W..

    d. Juveniles who require a medical screening exam or medical treatment (e.g., overdose, laceration, intoxication or altered mental status) will be transported by the ambulance crew to the closest appropriate emergency room that has pediatric capabilities (e.g., Children's National Medical, Georgetown University Hospital, CNMC UMC, or Howard University Hospital).

    e. If an ambulance crew refuses to transport the juvenile, MPD members shall transport the juvenile to the closest mental health facility.

2. If the juvenile is combative or the ambulance crew requests that a member ride in the ambulance, the member shall ensure that the juvenile is handcuffed and properly restrained and that one member rides in the ambulance and one member follows the ambulance to the facility.

Case 1:23-cv-01945-ACR   Document 43-2   Filed 01/26/24   Page 14 of 19

**INTERACTING WITH MENTAL HEALTH CONSUMERS (GO-OPS-308.04)   13 of 15**

3. In cases initiated by another D.C. agency or ChAMPS, the other agency will be responsible for completing the FD12.

4. Members who encounter a student at school who is 18 years of age or older and who poses a threat or danger to himself/herself or others due to limited mental capacity shall request an ambulance to transport the student to PIW.

5. Members requiring assistance shall contact the DBH Access Help-Line at 1-888-793-4357 or ChAMPS at 202-481-1440.

   NOTE: Both services are available twenty-four hours a day, seven days a week.

6. Members shall complete a PD Form 251-C for calls for service involving juvenile mental health consumers.

## VI.   ROLES AND RESPONSIBILITIES

A. Crisis Intervention Coordinators shall:

1. Provide managerial oversight for the Crisis Intervention Officer Initiative.

2. Prepare the monthly status/activity report which is to include:

   a. Calls for service with date, time and location;

   b. Self-initiated calls with date, time and location;

   c. Any injuries with date, time and location; and

   d. Brief summary of any significant cases.

3. Attend the monthly Crisis Intervention Coordinator meeting.

B. District officials shall:

1. When receiving a call for service at a location where there is a violent mental health consumer:

   a. Immediately respond to the designated location, assume command, and determine if Emergency Response Team (ERT) notification is necessary.

   b. Remain at the scene until relieved by the Watch Commander or senior ERT official.

        c. Notify DBH at 1-888-793-4357 in cases where the services of DBH may be useful in defusing a potentially dangerous situation involving a suspected mental health consumer.

C. Watch commanders shall:

1. After roll call, ensure the Command Information Center (CIC) is supplied the names, CAD numbers and assignments of each CIO for that shift and include this information on the daily deployment schedules.

2. Ensure copies of the PD Form 251-C are forwarded to the Crisis Intervention Coordinator prior to the end of the shift.

3. Ensure any approved involuntary detentions (i.e., FD-12s) are documented on the PD Form 150 (Tour of Duty Supervisor's Report).

D. The Commanding Official, Metropolitan Police Academy, shall maintain an updated list of members who have successfully received training and shall ensure the list is provided to the Command Information Center (CIC) and the Office of Unified Communication (OUC) whenever it is updated.

E. The Commanding Official, CIC, shall maintain a current list of those members trained as CIOs and shall ensure the list is easily accessible to assist in the deployment of CIOs.

F. The Emergency Response Team (ERT) shall be responsible for assisting district units with hostage and barricade situations and those situations where death or serious bodily injury is imminent that involve mental health consumers in accordance with GO-HSC-805.05 (Barricade/Hostage Situations and Other Unusual Incidents).

## VII. CROSS REFERENCES

A. GO-PCA-502.01 (Transportation and Searches of Prisoners)

B. GO-PCA-502.07 (Medical Treatment and Hospitalization for Prisoners)

C. GO-HSC-805.05 (Barricade/Hostage Situation and Other Unusual Incidents)

D. D.C. Official Code § 21-501 (Hospitalization of the Mentally Ill)

E. D.C. Official Code § 21-521 (Detention of persons believed to be mentally ill; transportation and application to hospital)

## VIII. ATTACHMENTS

1. Attachment A: FD Form 12 (Application for Emergency Hospitalization by a Physician or Psychologist of the Person, Officer, or Agent of D.C. Department of Human Services or an Officer to Make Arrests)

2. Attachment B: PD Form 251-C (Crisis Intervention Tracking Form)

3. Attachment C: PD Form 311 (Hospital Discharge and Psychiatric Review Notice)

*Cathy L. Lanier*
Cathy L. Lanier
Chief of Police

CLL:PAB:MOC:AWS:JC

TYPE OR PRINT

**Superior Court of the District of Columbia**

**APPLICATION FOR EMERGENCY HOSPITALIZATION BY A PHYSICIAN OR PSYCHOLOGIST OF THE PERSON, OFFICER, OR AGENT OF D.C. DEPARTMENT OF HUMAN SERVICES OR AN OFFICER TO MAKE ARRESTS**

TO:  Administrator, _____ Hospital

I, _____ , state

☐ **PHYSICIAN OR PSYCHOLOGIST OF THE PERSON:** That I am a physician _____ or qualified psychologist _____ (check one); that I am not related by blood or marriage to the alleged mentally ill person; that I am not financially interested in the hospital in which said person is to be detained; that the statements are based on my personal observation and examination of said person not more than 72 hours prior to the making of this application, and further [CHECK APPROPRIATE BOX (1) OR (2) BELOW].

  ☐ 1. That I am licensed under the laws of the District of Colombia; that I am not professionally or officially connected with the hospital in which said person is to be detained; and having reason to believe

  ☐ 2. That I am employed by the United States or District of Columbia; and having reason to believe

☐ **OFFICER OR AGENT, DHS** That I am a duly accredited officer or agent of the Department of Human Services of the District of Columbia; and having reason to believe

☐ **POLICE** That I am an officer authorized to make arrests in the District of Columbia; and having reason to believe that

_____

(Name, address, and age of person to be hospitalized)

is mentally ill and, because of such illness, is likely to injure self and/or others if not immediately detained, hereby make application under the provisions of Title 21, § 521, D.C. Code, for the admission of said person to the above-named hospital for emergency observation and diagnosis, and request that said person be examined by a psychiatrist or qualified psychologist on duty for said hospital.

(1) STATE CIRCUMSTANCES UNDER WHICH PERSON WAS TAKEN INTO CUSTODY (Use reverse side if needed)

_____
_____

(2) STATE FACTS WHICH LEAD YOU TO BELIEVE PERSON IS MENTALLY ILL (Use reverse side if needed)

_____
_____
_____

(3) STATE FACTS WHICH LEAD YOU TO BELIEVE PERSON IS LIKELY TO INJURE SELF AND/OR OTHERS AS A RESULT OF MENTAL ILLNESS (Use reverse side if needed)

_____
_____
_____

_____       _____
        Date                     Signature and Rank or Professional Title of Applicant

                                 _____
                                 Business Address (Precinct or Service)

                                 _____
                                 Telephone Number

Form FD(12) 826/Apr. 86
87--P9727 wd250

GO-OPS-308.04 (Processing of Persons who May Suffer from Mental Illness
Attachment A
PD Form 311 (Hospital Discharge and Psychiatric Review Notice)
February 09, 2015

## D.C. Metropolitan Police Department
### D.C. Department of Mental Health
#### Crisis Intervention Officer (CIO) Tracking Form

☐ Dispatched  Date ___/___/___  CCN# _____
☐ On-scene   Engage Time _____  Disengage Time _____

Subjects Name *(Last, First)* _____  Date of Birth (MM/DD/YY) ___/___/___

Event Address _____

Reporting Officer _____  District _____  CAD# _____

**Nature of Incident** *(Check all that apply)*
- ○ Disorderly/disruptive behavior
- ○ Neglect of Self Care
- ○ Nuisance (loitering, trespassing)
- ○ Threats or violence to others
- ○ Public Intoxication
- ○ Drug related offenses
- ○ Suicide threat or attempt
- ○ Inappropriately dressed or undressed
- ○ No Information
- ○ Other *(Specify)* _____

Did the subject use/brandish any weapons? ○ Yes  ○ No  ○ Don't Know
If Yes, specify type of weapon _____

**Incident Injuries**
Did subject injure or attempt to injure self?    ○ Yes  ○ No
Did subject injure or attempt to injure others?  ○ Yes  ○ No
If so, whom?  ○ Self  ○ Officer  ○ Animal  ○ Other (i.e., person)

**Prior Contacts**          **Drug Alcohol Involvement**
Known Person? ○ Yes ○ No    Evidence of drugs/alcohol? ○ Yes ○ No
If Yes, Specify: _____     If yes, ○ Alcohol
                             ○ Other Drug/specify _____
                             ○ Don't Know

Medication Compliant? ○ Yes  ○ No  ○ Don't Know

**Behaviors Observed During Incident** *(check all that apply)*
- ○ Disoriented or confused   ○ Incoherent speech   ○ Depressed
- ○ Hearing voices/Seeing things  ○ Frightened/Anxious  ○ Hyperactive
- ○ Hostile or uncooperative  ○ Developmental concern  ○ Nothing
- ○ Intoxication

**Disposition** *(check all that apply)*
- ○ No action/resolved on scene   ○ Outpatient/case management referral
- ○ On-Scene crisis intervention  ○ Police notified case manager or mental health center
- ○ Transported to detox          ○ Other-specify _____
- ○ Ervin Act/FD-12-826
- ○ Transported for evaluation to: _____
- ○ Mental health referral made (i.e. called Access Helpline)

Before CIO training, would you have responded differently? ○ Yes  ○ No
What would the charges have been? _____

---

**Summary (Nature of Event and Outcome/Action Taken):**

_____
_____
_____
_____

*Please attach copy of PD-251*

### Resource Information

**Department of Mental Health (DMH) 24 Hour Access Help-Line**
Phone: 1 (888) 793-4357   TDD Access Helpline: 202-561-7000

**Children & Adolescent Mobile Psychiatric Services (CHAMPS)**
Direct: (202) 481-1450   OR   DMH Access Help-Line (Above)

**Adult Mobile Crisis Services**
Direct: (202) 673-9300   OR   DMH Access Help-Line (Above)

**Comprehensive Psychiatric Emergency Program (CPEP)**
Direct: (202) 673-9319
DC General Hospital Compound • 1905 E St. SE, Building #14

**DMH Homeless Outreach Program**
Direct: 202-671-0388
64 New York Avenue, NE

### Common Psychiatric Medications:

| Psychotic Disorders | Mood Disorders | Anxiety Disorders |
|---|---|---|
| Geodon | Depakote | Buspar |
| Haldol | Effexor | Centrax |
| Mellaril | Neurontin | Inderal |
| Prolixin | Paxil | Klonopin |
| Risperadol | Prozac | Serax |
| Serentil | Tegretol | Tranxen |
| Seroquel | Topamax | Valium |
| Thorazine | Wellbutrin | Ativan |
| Zyprexa | Zoloft | |
| Xanex | Anafranil | |
| Clozaril | | |

GO-308.04 (Processing Persons...Mental Illness)
Attachment B
PD Form 251-C (Crisis Intervention Officer (CIO) Tracking Form)
February 09, 2015

PD Form 311




# Metropolitan Police Department

## Hospital Discharge and Psychiatric Review Notice

_____
DATE

**TO:** Administrator, _____ Hospital
NAME OF HOSPITAL

I, _____, herby request notification of any
NAME OF WATCH COMMANDER

hospital plan to discharge or otherwise release to the community _____
NAME OF PRISONER

who was admitted to your hospital on _____ after being criminally charged by
DATE

this department.

I am also requesting the disclosure of information regarding whether the patient's mental condition would permit him to be brought to court for a hearing. The disclosure of this information is necessary for law enforcement purposes, under (b)(7) of the Privacy Act, 5 U.S.C., Section 552a, to assure the continued custody of this person and assure the availability of this person for court appearances.

_____
WATCH COMMANDER SIGNITURE

_____
UNIT/PHONE NUMBER

GO-OPS-308.04 (Processing of Persons who May Suffer from Mental Illness
Attachment C
PD Form 311 (Hospital Discharge and Psychiatric Review Notice)
February 09, 2015