UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BREAD FOR THE CITY,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

    *Defendant*.

Civil Action No. 23-cv-01945 (ACR)

### ORDER

    Defendant the District of Columbia has moved for the Court to reconsider a Minute Order it entered on December 19, 2023, directing the parties to engage in settlement negotiations pending the resolution of the District's Motion to Dismiss. Dkt. 44. That Minute Order reaffirmed the Court's November 27, 2023 Order similarly requiring the parties to participate in settlement discussions. Dkt. 34 (Nov. Hr'g Tr.) at 28:8-18, 33:12-34:1. The District primarily argues that these Orders are *ultra vires* and that the Court can order only mediation as a form of alternative dispute resolution. *See* Dkt. 44-1 (Mot. Recons.). In response to a show-cause order the Court issued, the District also asserts that a referral to mediation would be premature. *See* Dkt. 65.

    As explained below, the Court disagrees on each point. The Court will, however, amend its Orders to require mediation. The Court therefore **GRANTS IN PART** and **DENIES IN PART** the District's Motion for Reconsideration.

    This litigation concerns the District's emergency response system's allegedly unlawful handling of mental health emergencies. While the District denies that its response system is unlawful, it "shares with Plaintiff the goal of enhancing its mental health emergency response

1

system." Dkt. 41-1 at 6. And it acknowledges, "with a caveat," that "[t]here are issues with the response by the police to mental health emergencies that . . . [it] is trying to address." Apr. 30, 2024 Hr'g Tr. (Apr. Hr'g Tr.) at 141:8-12.

As part of this effort and in cooperation with the Government Performance Lab at the Harvard Kennedy School, the District has created a pilot program to "develop[] best practices" and "change the way that response works for 911 for mental health emergencies." Nov. Hr'g Tr. at 27:10-25. Plaintiff is "aware of" the program but "still ha[s] concerns about [its] efficacy." *Id.* at 28:5-7. Given the uniform agreement that the District's response system needs improvement, the Court ordered the parties to "see if [they] all [could] come to an agreement" by having experts from both sides talk about how to improve the District's response system. *Id.* at 28:11-14. In its December 19 Minute Order, the Court ordered that these discussions take place while the District's Motion to Dismiss is pending and continue thereafter if that Motion is denied. Min. Order of Dec. 19, 2023.

The District claims that these Orders impose an *ultra vires* injunction. Mot. Recons. at 9-13. That contention misunderstands the Orders, which do not enjoin the District to make any modifications to its response system but instead simply require settlement discussions. As the Court explained, "[the Court] will make a decision [if necessary] . . . . But . . . everyone . . . [is] going to be much happier if . . . all [the] very intelligent people [on both sides] . . . who know about it a lot more than [the Court does] figure out a way forward." Nov. Hr'g Tr. at 33:19-34:1. This is well within the Court's inherent authority to order parties to engage in settlement discussions. *See, e.g.*, *Byrd v. Vilsack*, No. 10-cv-1809 (D.D.C. Mar. 18, 2013), Dkt. 39 (ordering parties to engage in settlement negotiations); *United States v. New York*, No. 98-cv-1232 (D.D.C. Sept. 28, 2001), Dkt. 634 (same); *see also, e.g.*, *Goss Graphics Sys., Inc. v. DEV*

*Indus., Inc.*, 267 F.3d 624, 627 (7th Cir. 2001) ("Federal courts do have authority to require parties to engage in settlement negotiations . . . ."); *H&E Equip. Servs. v. Ryberg*, No. 17-cv-82, 2017 U.S. Dist. LEXIS 59607, at *1-2 (D. Ariz. Apr. 19, 2017) ("Although the Court can not force any party to settle, it is within the Court's authority to compel the parties to engage in settlement negotiations.").

The District separately claims that Local Civil Rule 84 permits the Court to order settlement negotiations only through formal mediation.  Apr. Hr'g Tr. at 157:21-22.  To be sure, Local Civil Rule 84.4(a) empowers the Court to "refer civil cases to mediation . . . by requiring litigants to participate after giving them an opportunity, in response to an order to show cause, to explain why mediation would not be appropriate in their case."  But nothing in that rule or any other constrains the Court's powers with respect to alternative dispute resolution to mediation.  *Cf. In re Atl. Pipe Corp.*, 304 F.3d 135, 142-43 (1st Cir. 2002).  However, since both parties agree that the Court can order mediation and have had the opportunity to respond to a show-cause order, the Court will amend its Orders to require mediation.

Turning to mediation: the District argues that referral to mediation is inappropriate because (1) settlement talks should await a ruling on the District's Motion to Dismiss or the completion of discovery, and the District does not believe Plaintiff's claims are meritorious, Apr. Hr'g Tr. at 153:7-9, 155:14-18; Dkt. 65 at 3-6; (2) the District "does not need" to consult with Plaintiff's experts, Apr. Hr'g Tr. at 135:16-17; (3) preparing participants for discussions is as burdensome as "preparing someone to go into a deposition," *id.* at 151:1-3; and (4) the parties' counsel have good relationships and do not require the assistance of a mediator to communicate effectively, Dkt. 65 at 3-4.

The Court takes each contention in turn:

First, under the circumstances of this particular case, the Court does not believe that the parties must or should wait for a ruling on the Motion to Dismiss or full discovery before beginning settlement discussions.  The Court has already signaled that it plans to deny the Motion insofar as it challenges the Court's subject matter jurisdiction.  Apr. Hr'g Tr. at 134:10-19.  And while the Court has ordered supplemental briefing on the merits and has not made a final decision, on the current record it is probable that it will deny the remainder of the District's Motion.  Waiting for a ruling will thus create delay and increase litigation burdens, not promote efficiency.  Deferring settlement talks to the close of discovery makes still less sense: most, if not all, of the relevant discovery is already in the District's possession, and early settlement talks are useful precisely for avoiding burdensome, expensive, and time-consuming discovery.  The District is, of course, free to maintain that Plaintiff's claims lack merit, and, if the parties do not reach a settlement, the Court will decide this case.  But, on the current record, the Court concludes that Plaintiff's claims are far from frivolous and that the parties may be better positioned to reach a mutually agreeable resolution than the Court.  And even if the parties are unable to resolve the case completely, they may be able to narrow the issues.  These are precisely the circumstances under which mediation may be useful.

Second, while the District contends that it "does not need [Plaintiff's experts'] expertise," *id.* at 135:16-17, any productive settlement discussions will require input from both sides' experts.  Especially given that all agree that the District's response system can use improvement, the District does not suffer meaningful prejudice from receiving input directly from Plaintiff's experts during settlement discussions.

Third, the District need not prepare the participating individuals for deposition-type questions. The parties agreed that lawyers cannot ask questions during the discussions. *Id.* at 151:7-9. And, in any event, the discussions are covered by Federal Rule of Evidence 408 and thus cannot be used as evidence. *See* Fed. R. Ev. 408; Apr. Hr'g Tr. at 132:17-24, 150:2-6.

Fourth, and finally, the Court hopes that the parties' counsel's good relationships will be conducive to reaching a settlement. But the Court has already tried to give the parties the opportunity to confer independently, and the District responded with the instant Motion for Reconsideration. The Court therefore turns to mediation.

The Court concludes that, under the circumstances of this case, the potential benefits of early settlement discussions in avoiding burdensome, ongoing litigation outweigh any prejudice to the District. The Court therefore **ORDERS**:

(1) that the parties shall mediate with Magistrate Judge Moxila A. Upadhyaya within thirty days of the date of this Order, unless otherwise ordered by Judge Upadhyaya;

(2) that Judge Upadhyaya shall have full authority to structure the mediation to account for the nature and scope of these proceedings, including whether multiple sessions are necessary for meaningful discussion to occur;

(3) that each party shall have at the mediation at least two individuals with expertise in how the District and/or other governments respond to mental health emergencies, with individuals from the Harvard Kennedy School also welcome to attend;

(4) that the parties shall work in good faith to settle this case, or, if they cannot reach a full settlement, to narrow the issues for the Court's resolution; and

(5) that the parties shall submit a joint status report within one week of the first mediation session.

The parties should expect that, if mediation with Judge Upadhyaya proves unsuccessful, the Court will likely order them to engage in private mediation and divide the costs evenly.

**SO ORDERED.**

Date:   May 21, 2024

                                                                _____
ANA C. REYES
United States District Judge