**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BREAD FOR THE CITY,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:23-cv-01945-ACR** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

**DEFENDANT DISTRICT OF COLUMBIA'S SUPPLEMENTAL RESPONSE BRIEF**

**TABLE OF AUTHORITIES** ................................................................................................iii

**INTRODUCTION** ........................................................................................................... 1

**ARGUMENT** .................................................................................................................. 2

    **I.**    **Plaintiff Pleads that Mental Health Professionals Responding to Mental Health Crises Is the Service at Issue; Plaintiff's Contention that a Timely and Effective Emergency Response Is the Service at Issue Is a Factually Unsupported Legal Conclusion Owed No Deference.** ............................................... 2

        **A.**    **The Court Should Consider Plaintiff's Allegations and Reasonable Inferences To Establish a Reasonable Definition of the Service at Issue.** ......................... 2

        **B.**    **The Court Need Not Accept Plaintiff's Conclusory Labels To Define the Service.** ................................................................................................... 4

        **C.**    **The Court Need Only Read Plaintiff's Complaint To See that the Service at Issue Is Mental Health Professionals Responding to Mental Health Crises.** ... 9

    **II.**    **The Holding in _Modderno_ Is Controlling and Dispositive and Was Not Displaced by _Olmstead_ or Legislation.** ........................................................... 11

    **III.**    **Plaintiff's Definition of Disability Is Inconsequential.** ............................... 15

    **IV.**    **Plaintiff Does Not Identify a Distinct Equal Opportunity Claim.** ................ 17

    **V.**    **Plaintiff's Proposal to Add Five New Paragraphs to Its Complaint Would Not Save the Complaint from Dismissal.** ........................................................... 19

**CONCLUSION** ............................................................................................................ 21

# TABLE OF AUTHORITIES

*Cases*

*Alexander v. Choate,*
469 U.S. 287 (1985) ...................................................................... 4, 5, 12, 13

*Am. Council of the Blind v. Paulson,*
525 F.3d 1256 (D.C. Cir. 2008)...................................................... 3, 4, 12, 16

*Amundson ex rel. Amundson v. Wisc. Dep't of Health Servs.,*
721 F.3d 871 (7th Cir. 2013) ......................................................... 12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................... 3

*Barden v. City of Sacramento,*
292 F.3d 1073 (9th Cir. 2002) ....................................................... 3, 5

*Bragdon v. Abbott,*
524 U.S. 624 (1998) ....................................................................... 17

*Brown v. District of Columbia,*
928 F.3d 1070 (D.C. Cir. 2019)..................................................... 9

*Brown v. Gov't of the District of Columbia,*
390 F. Supp. 3d 114 (D.D.C. 2019) .............................................. 7

*Civic Ass'n of Deaf of NYC, Inc. v. Giuliani,*
915 F. Supp. 622 (S.D.N.Y. 1996) ............................................... 17

*Cmtys. Actively Living Indep. & Free v. City of L.A.,*
2011 WL 4595993 (C.D. Cal. Feb. 10, 2011) ............................... 6

*Crowder v. Kitagawa,*
81 F.3d 1480 (9th Cir. 1996)......................................................... 8

*Ctr.for Indep. of the Disabled v. Bloomberg,*
980 F. Supp. 2d 588 (S.D.N.Y. 2013) .......................................... 6

*Doe v. CVS Pharmacy, Inc.,*
982 F.3d 1204 (9th Cir. 2020) ...................................................... 5

*E.T. v. Morath,*
571 F. Supp. 3d 639 (W.D. Tex. 2021) ......................................... 8

*Est. of LeRoux v. Montgomery Cnty.,*
2023 WL 2571518 (D. Md. 2023)................................................. 7, 10

*Food & Drug Administration v. Alliance for Hippocratic Medicine,*
602 U.S. 367 (June 13, 2024) ........................................................ 20

*Getzes v. Mackereth,*
2013 WL 5786000 (M.D. Penn. 2013)........................................... 5

*Gorman v. Bartch,*
152 F.3d 907 (8th Cir. 1998) ........................................................ 5

*Greene v. City of New York,*
2024 WL 1308434 (S.D.N.Y Mar. 26, 2024).............................. 5, 6, 11, 15

*Helen L. v. DiDario,*
46 F.3d 325 (3d Cir. 1995) ........................................................... 9

*Henrietta D. v. Bloomberg,*
331 F.3d 261 (2d Cir. 2003) ......................................................... 7

*Hindel v Husted*,
   875 F.3d 344 (6th Cir. 2017) ................................................................ 4, 18
*Johnson v. Callanen*,
   608 F. Supp. 3d 476 (W.D. Tex. 2022) ................................................... 5, 8
*Jones v. City of Monroe, Mich.*,
   341 F.3d 474 (6th Cir. 2003) ................................................................. 4, 5
*L.E. ex. rel. Cavorley v. Superintendent of Cobb Cnty. Sch. Dist.*,
   55 F.4th 1296 (11th Cir. 2022) .............................................................. 3, 5
*Lewis v. Humboldt Acq. Corp.*,
   681 F.3d 312 (6th Cir. 2012) ..................................................................... 4
*McGary v. City of Portland*,
   386 F.3d 1259 (9th Cir. 2004) ................................................................... 19
*McNally v. Prison Health Servs.*,
   46 F. Supp. 2d 49 (D. Me. 1999) ................................................................ 5
*Messier v. Southbury Training Sch.*,
   562 F. Supp. 2d 294 (D. Conn. 2008) ........................................................ 18
*Modderno v. King*,
   82 F.3d 1059 (D.C. Cir. 1996) .......................................................... *Passim*
*Montgomery v. District of Columbia*,
   2019 WL 3557369 (D.D.C. 2019) ......................................................... 7, 10
*Nat'l Fed'n of the Blind v. Lamone*,
   813 F.3d 494 (4th Cir. 2016) ...................................................................... 5
*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581 (1999) .......................................................................... *Passim*
*P.M. by & through Martine v. City of Winfield*,
   2020 WL 10181570 ................................................................................. 17
*Rodde v. Bonta*,
   357 F.3d 988 (9th Cir. 2004) ...................................................................... 7
*Sacchetti v. Gallaudet Univ.*,
   181 F. Supp. 3d 107 (D.D.C. 2016) ...................................................... 7, 10
*Shotz v. Cates*,
   256 F.3d 1077 (11th Cir. 2001) .................................................................. 8
*United States v. Florida*,
   682 F. Supp. 3d 1172 (S.D. Fla. 2023) ...................................................... 19
*Young v. City of Claremore, Okla.*,
   411 F. Supp. 2d 1295 (N.D. Okla. 2005) .................................................... 5

### Statutes

29 U.S.C. § 705(20) .......................................................................................... 16
29 U.S.C. § 794(a) ............................................................................................ 16
42 U.S.C. § 12102(1)(A), (C) .......................................................................... 16
42 U.S.C. § 12132 ........................................................................................ 3, 16
Pub.L. No. 102-569, § 506 ................................................................................ 13

iv

**INTRODUCTION**

Defendant District of Columbia (the District) responds as follows to Plaintiff's Supplemental Briefing [73], the United States of America's (the United States's or U.S.'s) Supplemental Statement of Interest [71], and the Supplemental Amicus Brief of Mental Health America, *et al.* (Amicus) [74].  As discussed in detail below, resolution of the five questions posed by the Court's April 30, 2024 Minute Order demonstrates that the District's Motion to Dismiss the Complaint [42] should be granted.  First, the Parties, the United States, and Amicus all agree that the definition of a service under Title II of the Americans with Disabilities Act (Title II or ADA) and Section 504 of the Rehabilitation Act presents a mixed question of law and fact.  Applying the appropriate pleading standards to Plaintiff's Complaint [1], the specific service Plaintiff alleges is at issue here is mental health professionals responding to mental health crises.  *See* Def. District's Suppl. Br. (District's Suppl.) [75-1] at 2–7.[1]  Second, Plaintiff, the United States, and Amicus misstate the holdings of *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), and *Modderno v. King*, 82 F.3d 1059 (D.C. Cir. 1996)—under the correct understanding of each, *Modderno* is dispositive.  *See* District's Suppl. at 7–11.  Third, every participant agrees that it does not matter whether persons experiencing mental health crises have or are regarded as having mental health disabilities; the outcome is the same.  *See, e.g.*, District's Suppl. at 11–14.  Fourth, Plaintiff, the United States, and Amicus all fail to explain how a meaningful access case is supposedly different from an equal opportunity or reasonable accommodation case.  *See, e.g.*, District's Suppl. at 14–17.  It is not.  Fifth, and finally, the five additional paragraphs Plaintiff proposes adding to its Complaint would not save it from

---

[1]     Citations to all supplemental briefs are to each brief's internal pagination rather than the ECF page number.  The pages cited in the District's Supplemental Brief [75-1] correspond to the version of that brief with tables of contents and authorities attached to the District's Errata [75].

dismissal.  *See* Pl.'s Response Court's Request for Suppl. Br. (Pl.'s Suppl.) at 28–30.  For all

these reasons, and those stated in support of the District's Motion to Dismiss [42-1] and its Reply

[61], Plaintiff has failed to state a plausible claim to relief, and the Complaint should be

dismissed.

## ARGUMENT

**I.     Plaintiff Pleads that Mental Health Professionals Responding to Mental Health
        Crises Is the Service at Issue; Plaintiff's Contention that a Timely and Effective
        Emergency Response Is the Service at Issue Is a Factually Unsupported Legal
        Conclusion Owed No Deference.**

**How should the Court define the activity, program, or service at issue in this
case and the benefits of that activity, program, or service?  If the parties have
competing views, how should the Court choose between them?**

The Parties, the United States, and Amicus all agree that the definition of activity,

program, or service presents the Court with a mixed question of fact and law that necessarily

requires a fact specific inquiry.  *See* Pl.'s Suppl. at 2; District's Suppl. at 2; Suppl. Statement of

Interest (U.S.'s Suppl.) at 8–9; Suppl. Amicus Br. Opp'n Def.'s Mot. Dismiss (Amicus's Suppl.)

at 3–4.  Accepting all the well-plead factual allegations in Plaintiff's Complaint as true and

drawing all *reasonable* inferences in Plaintiff's favor—as is required—the only service at issue

plausibly alleged in Plaintiff's Complaint is mental health professionals responding to mental

health crises.  *See* District's Suppl. at 2–3.  Plaintiff's contention that the service at issue is  a

"unified emergency response program," Pl.'s Suppl. at 4, relies on labels, unreasonable

inferences, and legal conclusions, and is owed no deference.

### A.     The Court Should Consider Plaintiff's Allegations and Reasonable
          Inferences To Establish a Reasonable Definition of the Service at Issue.

The District is not—at this stage—disputing any of the facts in Plaintiff's Complaint.

The legal dispute between the Parties is instead whether the *law* "'instructs courts to focus on

narrow programs and benefits offered by a public entity when evaluating claims under the ADA and Section 504,'" as the District argues.  District's Suppl. at 3 (quoting *L.E. ex. rel. Cavorley v. Superintendent of Cobb Cnty. Sch. Dist.*, 55 F.4th 1296, 1302 (11th Cir. 2022)).  In contrast, Plaintiff's approach would require the Court to accept conclusory labels that lump the true service at issue in with other services merely because they have some metaphysical connection. *See* Pl.'s Suppl. at 3–9.

More to the point, in evaluating the definition of a "service" under Title II and Section 504, the District acknowledges that the term can apply to both broad government programs and specific services.  *See* Pl.'s Suppl. at 3–4, 10; U.S.'s Suppl. at 1–5, 11; Amicus's Suppl. at 3 n.8; *cf., e.g.*, *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) ("The district court's order was based on its conclusion that sidewalks are not a service, program, or activity of the City.").  But the statutes themselves do not define what "services, programs, or activities" are actually at issue in this or any other case.  42 U.S.C. § 12132.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Although the cases addressing meaningful access are necessarily fact-specific, they do reflect, in light of Supreme Court guidance, a general pattern." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008).

> Where the plaintiffs identify *an obstacle* that impedes their access to a government program or benefit, they likely have established that they lack meaningful access to the program or benefit. By contrast, where the plaintiffs *seek to expand the substantive scope* of a program or benefit, they likely seek a fundamental alteration to the existing program or benefit and have not been denied meaningful access.

*Id.* at 1267 (emphases added); *see also* U.S.'s Suppl. at 21.

In evaluating the allegations in this case, the Court should not adopt a definition of the program or service at issue that is so broad it does not actually reflect the alleged benefit being offered by the District or being sought by Plaintiff.  *See* District's Suppl. at 3 (discussing *Alexander v. Choate*, 469 U.S. 287, 303 (1985)); Pl.'s Suppl. at 3 (same).  Nor, it is true, should the Court adopt a definition "that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled."  *Alexander*, 469 U.S. at 301; *see, e.g.*, Pl.'s Suppl. at 8–9.  But, put together, all this means is that the Court should carefully look at the allegations in Plaintiff's Complaint to identify what Plaintiff wants (a benefit), whether that it is something offered to the public (*e.g.*, a service), and whether Plaintiff has identified an impediment to receiving that service  that is related to the disability at issue (an obstacle) or whether Plaintiff is asking for something new or better (an expansion of the service).  *See Paulson*, 525 F.3d at 1267; *cf. Jones v. City of Monroe, Mich.*, 341 F.3d 474, 477 (6th Cir. 2003) ("[W]e must first examine the nature of the benefit offered by Monroe."), *abrogation in part on other grounds recognized by Hindel v Husted*, 875 F.3d 344, 348 (6th Cir. 2017) (citing *Lewis v. Humboldt Acq. Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc)); U.S.'s Suppl. at 8 ("Plaintiff's allegations about the nature and purpose of a service, program, or activity are necessarily fact bound.").  And caselaw demonstrates that some meaningful access cases are indeed properly dismissed for failure to state a claim as a matter of law.  *See Modderno*, 82 F.3d at 1063.  This one should be, too.

### B.    The Court Need Not Accept Plaintiff's Conclusory Labels To Define the Service.

No case cited in the supplemental brief submitted by Plaintiff, the United States, or Amicus supports the proposition that the Court should simply accept Plaintiff's legal framing of the services at issue rather than looking to the well-pled facts of the Complaint.  *See* Pl.'s Suppl.

at 5–12; U.S.'s Suppl. at 3–12; Amicus's Suppl. at 6–10.  To be sure, the plaintiffs in some of the cases cited did provide a workable—that is, an appropriately narrow and specific—definition of the benefit or service at issue relative to the alleged obstacle.  *See* Pl.'s Suppl. at 3, 7, 9; U.S.'s Suppl. 5 & n.2; Amicus's Suppl. at 8 n.26, 10 & nn. 32–33; *cf. Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210–11 (9th Cir. 2020) (applying *Alexander* to an Affordable Care Act claim and finding a prescription drug benefit to be the service at issue); *Barden*, 292 F.3d at 1075 (accessible or usable sidewalks); *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (post-arrest transportation); *Johnson v. Callanen*, 608 F. Supp. 3d 476, 487 (W.D. Tex. 2022) (voting by mail versus in person); *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58–59 (D. Me. 1999) (prescription medication while in detention); *Getzes v. Mackereth*, 2013 WL 5786000, at *4 (M.D. Penn. 2013) (permanent versus temporary dental bridges); *cf. also Young v. City of Claremore, Okla.*, 411 F. Supp. 2d 1295, 1303–14 (N.D. Okla. 2005) (rejecting plaintiff's claim that the ADA required the city to give him "unfettered access" to "streets, roads, and highways" on his golf cart).  Yet in other cases, the plaintiffs failed to do so.  *See, e.g.*, Pl.'s Suppl. at 3; *cf. Alexander*, 469 U.S. at 302–06 (rejecting "the amorphous objective of 'adequate health care'" as the basis for a Section 504 claim); *Jones*, 341 F.3d at 479 (defining the service at issue as "free downtown parking in specific locations" rather than, as plaintiff desired, "free downtown parking that allows [plaintiff] access to her destination of choice").

Indeed, several cases squarely reject the type of broad generalizations Plaintiff makes to define the services at issue here.  *See, e.g.*, *Alexander*, 469 U.S. 287; *L.E.*, 55 F.4th at 1303; *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016); *Greene v. City of New York*, No. 21-cv-05762, 2024 WL 1308434 (S.D.N.Y Mar. 26, 2024); *see also* Pl.'s Suppl. at 3, 8–9; U.S.'s Suppl. at 6–7, Amicus's Suppl. at 8–9 (acknowledging and discussing these cases).  The *Greene*

court was particularly "unmoved by [the Department of Justice's (DOJ's)] analysis" of the
Minneapolis Police Department's practices.  2024 WL 1308434 at **15–16.  The *Greene* court
unambiguously stated that the DOJ's framing "only works if pitched at a level of generality
which treats mental and medical health calls as equivalent 'emergency services.'  But this is not
the law."  2024 WL 1308434 at *16; *see id.* at *16 n.13 (collecting supporting cases).  Put
another way, the claim in *Greene*, just as Plaintiff's claim here, was simply too broad to
accurately capture the service the plaintiffs were actually concerned about:  New York City's
response to mental health crises.  *See id.* at *14.  And in fact, as the *Greene* court remarked, the
only relevant comparison to medical emergency services would be if the plaintiffs had alleged
that particular *medical* services were being denied to them on the basis of their *mental*
disabilities.  *See id.* at *16.  But that was not their claim, nor is it this Plaintiff's claim.  Finally,
Plaintiff correctly notes that the plaintiffs in *Greene* have filed an amended complaint, adding
new claims alleging discrimination in New York City's emergency response program "in its
entirety."  Pl.'s Suppl. at 8 (citing 3d Am. Compl. [212] ¶¶ 444–52, *Greene v. NYC*, Civil Action
No. 1:21-cv-05762 (S.D.N.Y. June 7, 2024)).  But simply amending the allegations does not
mean those plaintiffs followed the court's direction to file an amendment "in a manner consistent
with" the court's opinion or that they now have a viable claim.  *Greene*, 2024 WL 1308434 at
*20.  In other words, Plaintiff fails to differentiate the applicable reasoning in *Greene* from this
case.  *See* Pl.'s Suppl. at 8; U.S.'s Suppl. at 8 & n.3, 20–21.

     As for the other general emergency services cases Plaintiff cites, the District has already
explained why they support a close reading of the Complaint, and a consequently targeted, rather
than expansive, interpretation of "service."  *See* District's Reply at 13–14 (discussing *Brook.
Ctr. for Indep. of the Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013), and *Cmtys.*

*Actively Living Indep. & Free v. City of L.A.*, No. CV 09-0287 CBM (RZx), 2011 WL 4595993 (C.D. Cal. Feb. 10, 2011)), at 16–17 (discussing *Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004)). The other cases cited by the United States and Amicus—only tangentially related to the claim at issue here, at best—merely demonstrate that the Court must accept and analyze the facts as alleged in Plaintiff's Complaint when defining the service at issue.  *See* U.S.'s Suppl. at 9, 23–24; Amicus's Suppl. at 10 & n.31; *cf. Brown v. Gov't of the District of Columbia*, 390 F. Supp. 3d 114, 125 (D.D.C. 2019) ("[A]llegations of fact must be accepted as true at the motion-to-dismiss stage, and Plaintiffs' contentions regarding the character of the fora to which the Act applies are not clearly precluded as a matter of law such that the complaint's 'public forum' assertions cannot support a plausible claim."); *Montgomery v. District of Columbia*, 2019 WL 3557369, at *11 (D.D.C. 2019) ("Drawing all reasonable inferences in plaintiff's favor, the detailed allegations of MPD's failure to accommodate Montgomery's obvious disability during his arrest and interrogation . . . are enough, at this stage, to state a plausible claim."); *Sacchetti v. Gallaudet Univ.*, 181 F. Supp. 3d 107, 130 (D.D.C. 2016) ("Whether the plaintiffs can establish that the MPD officers' alleged conduct amounted to a denial of reasonable accommodations for Manganelli's disabilities is a question properly reserved for resolution until a meaningful opportunity for discovery is provided."); *Est. of LeRoux v. Montgomery Cnty.*, 2023 WL 2571518 at *1–4, *6–18 (D. Md. 2023).

Finally, the remainder of the cases cited in the supplement briefs, *e.g.*, Pl.'s Suppl. at 10, 17–18; U.S.'s Suppl. at 6, 23; Amicus's Suppl. at 10 & nn.32–33, bear too little resemblance to Plaintiff's Complaint to be useful.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 265, 277–78 (2d Cir. 2003) (alleging "unique physical hurdles in attempting to access certain public assistance benefits and services" that they were statutorily entitled to because plaintiffs were

"sharply limited in their ability to travel, stand in line, attend scheduled appointments, complete paperwork, and otherwise negotiate medical and social services bureaucracies." (brackets and quotation marks omitted)); *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (concerning physical barriers to public infrastructure); *Crowder v. Kitagawa*, 81 F.3d 1480, 1481, 1485 (9th Cir. 1996) (seeking "exemption from Hawaii's imposition of a 120-day quarantine on carnivorous animals entering the state" because it "effectively precludes visually-impaired persons from using a variety of public services."); *Johnson v. Callanen*, 608 F. Supp. 3d 476, 484 n.10 (W.D. Tex. 2022) (finding that the Court did not need to decide whether "voting by mail is a service, program, or activity," in part, because the defendants did "not dispute [p]laintiffs' assertions"); *E.T. v. Morath*, 571 F. Supp. 3d 639, 656–60 (W.D. Tex. 2021) (enjoining a ban on mask mandates alleged to have interfered with access to public schools), *vacated and remanded*, *E.T. v. Paxton*, 41 F.4th 709, 713 (5th Cir. 2022) (holding the district court lacked subject matter jurisdiction).

This is especially true of *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 (1999). The issue in *Olmstead* was not whether "'medical services'" and mental health services are the same thing. Pl.'s Suppl. at 6 (quoting *Olmstead*, 527 U.S. at 601). Rather than discussing how to interpret a complaint to determine the scope of a particular challenged "service," *Olmstead* "confront[ed] the question whether the proscription of discrimination may require placement of particular persons with mental disabilities in community settings rather than in institutions." 527 U.S. at 587. The district court had found that "institutional segregation of the disabled constitutes discrimination *per se*." *Id.* at 594 (emphasis original). The *Olmstead* Court instead determined that:

> [U]nder Title II of the ADA, States are required to provide community-based treatment for persons with mental disabilities when the State's treatment

> professionals determine that such placement is appropriate, the affected persons do
> not oppose such treatment, and the placement can be reasonably accommodated,
> taking into account the resources available to the State and the needs of others with
> mental disabilities.

*Id.* at 607.  The resulting line of cases dealing with unjustified segregation does not apply to

defining the scope of the service here.  *See* U.S.'s Suppl. at 6; *Brown v. District of Columbia*,

928 F.3d 1070, 1073 (D.C. Cir. 2019); *Helen L. v. DiDario*, 46 F.3d 325, 326 (3d Cir. 1995).

In sum, there is no support for the proposition that this Court "must defer to" Plaintiff's

conclusion that "the District's response to physical and mental health emergencies constitutes

one program."  Pl.'s Suppl. at 9, 12.  Nor does "Plaintiff's claim require[] comparing it to the

experience of the general population during a wide range of other health related emergencies."

U.S.'s Suppl. at 12 (citing Compl. ¶ 2); *see also* Mot. Hearing Tr. 23:17–18 (Plaintiff's Counsel:

"We're not making a disparate impact claim.").  And it certainly is not the case that dismissing

Plaintiff's claim—which in effect, alleges that the District "treats everyone alike" when

responding to mental health emergencies—"would effectively gut the ADA and Rehabilitation

Act's anti-discrimination mandates."  Amicus's Suppl. at 9.

## C.   The Court Need Only Read Plaintiff's Complaint To See that the Service at Issue Is Mental Health Professionals Responding to Mental Health Crises.

Ultimately, the Court need only look to the well-plead facts of Plaintiff's Complaint to

see that the alleged service at issue here is mental health professionals responding to mental

health crises.  Plaintiff's allegations "articulate a meaningful difference between mental and

physical health crises," draw a distinction between "physical and mental health emergencies,"

and separately define what services are provided in response to each type of emergency.  Pl.'s

Suppl. at 4–5; *see* District's Suppl. at 3–7.  Plaintiff concedes that "[t]he Complaint states that

the District operates an emergency response 'program,' that is made up of internal 'systems,' and

references (plural) emergency response 'services.'" Pl.'s Suppl. at 4 (citations omitted). But it does not matter that "[b]oth mental health emergencies and other [medical or physical] health emergencies" might be broadly understood as "*health* emergencies" or that people can access services for either type of emergency by calling 911, because the specific service Plaintiff pleads is mental health professionals responding to mental health crises. Amicus Suppl. at 2 (emphasis original); *see* Pl.'s Suppl. at 11–12; U.S. Suppl. at 12, 15; *cf.* District's Suppl. at 4–5, 7–8 (discussing *Modderno*). Simply put, Plaintiff does not allege that the District fails to provide individuals with mental health disabilities with "timely and effective emergency services" (plural) that are provided to any other non-disabled members of the public because of their mental impairment. Pl.'s Suppl. at 11; *see* District's Suppl. at 3–7.

Moreover, "Plaintiff's Complaint is not about . . . how MPD responds to crimes" or other public safety concerns. District's Suppl. at 4. While "[t]he ADA applies to police departments and their investigations of criminal conduct," Plaintiff does not allege that the District has specific "knowledge of [any] person's disability and related limitations" or any "need for a reasonable modification [that] was obvious or apparent" to the District in any specific instance of a police response. *LeRoux*, 2023 WL 2571518 at *6, *8; *see also Sacchetti.*, 181 F. Supp. 3d at 130; *Montgomery*, 2019 WL 3557369, at *9. For example, Plaintiff does not allege that anyone it claims to represent "would still be alive if reasonable accommodations" to police services, "such as dispatching the Mobile Crises Team, the Crisis Intervention Team, or an officer trained in [crisis intervention or de-escalation techniques] . . . had been provided," *LeRoux*, 2023 WL 2571518 at *11, rendering the U.S.'s reliance on *LeRoux* inapposite. *See* U.S. Suppl. at 23. To the contrary, Plaintiff alleges it "will call 911 if an individual presents a physical danger to others." *See* Compl. ¶ 157. And Plaintiff does not allege that MPD discriminates against anyone or

otherwise fails to provide any apparently mentally impaired individual with equal access to police services. Plaintiff claims instead that the District discriminates against the mentally impaired by quickly responding to physical health emergencies with highly trained emergency medical technicians. *See* Pl.'s Suppl. Compl. ¶¶ 117–39. "[T]his is not the law." *Greene*, 2024 WL 1308434 at *16.

**II.      The Holding in *Modderno* Is Controlling and Dispositive and Was Not Displaced by *Olmstead* or Legislation.**

**How, if at all, does the D.C. Circuit's decision in *Modderno v. King*, 82 F.3d 1059 (D.C. Cir. 1996), apply to this case? In particular, the parties should address whether *Modderno*'s precedential value is affected by the Supreme Court's decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), or subsequent amendments to the ADA.**

In *Modderno* the D.C. Circuit held that "distinctions between mental and physical care" in public policies establishing levels of service for each type of care is *not* discrimination per se. 82 F.3d at 1062. No theory advanced by Plaintiff, the United States, or Amicus provides a reasonable explanation for how the Supreme Court's holding in *Olmstead*, 527 U.S. 581, or subsequent statutory amendments overturn that proposition.

First, Plaintiff argues that *Modderno* "arose in the insurance context," and that  it is factually distinguishable. *See* Pl.'s Suppl. at 12, 14–15; *see also* U.S.'s Suppl. at 12–13; Amicus's Suppl. at 11–12. But Plaintiff does not explain why or how Title II and Section 504 would define discrimination in health insurance plans differently than how they define discrimination for emergency services. The *Modderno* court certainly recognized the similarities between Medicaid and insurance plans, but it did not rely on those similarities to conclude that offering different levels of service for different disabilities is not discrimination under the statute. *See id.* at 1061 & n.1. And *Modderno* found that the "complaint fail[ed] to state a claim under [Section] 504 . . . as it stood before its amendment in 1992." 82 F.3d at 1063. Nothing about

that holding suggests it "is limited to the terms and conditions of insurance and benefits plans." U.S.'s Suppl. at 12.  In fact, the D.C. Circuit has relied on *Modderno* in contexts far beyond the terms and conditions of such plans.  *See Paulson*, 525 F.3d at 1268 (citing *Modderno*, along with *Alexander*, 469 U.S. at 303, in a case involving whether features of U.S. currency discriminated against the visually impaired).

Plaintiff next argues that "subsequent legal developments have eclipsed parts of *Modderno*'s reasoning."  Pl.'s Suppl. at 12.  For example, Plaintiff, the United States, and Amicus all cite *Amundson ex rel. Amundson v. Wisc. Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013), to argue that *Olmstead* rejected the proposition "that discrimination among disabled persons never violates the ADA or Rehabilitation Act."  *See* Pl.'s Suppl. at 12–13; U.S. Suppl. 13–15; Amicus's Suppl. at 12–13.  But *Modderno* did not hold otherwise.  Rather than forbidding *any* comparison of discrimination among disabled persons, *Modderno* held instead that generalized, blanket, comparisons between mental and physical care—as the Plaintiff advances here—are insufficient to state a claim.  82 F.3d at 1062.

Similarly, Amicus highlights that the dissent in *Olmstead* argued that "[the Supreme] Court has never endorsed an interpretation of the term 'discrimination' that encompassed disparate treatment among members of the same protected class."  Amicus's Suppl. at 13 (quoting 527 U.S. at 616 (Thomas, J., dissenting)).  The fact that this proposition was rejected suggests only that *some* disparate treatment among members of a protected classes *might* be sufficient to state a discrimination claim.  All *Olmstead* held is "that States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide"—it "did not . . . hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to

individuals with disabilities.'"  527 U.S. at 603 n.14.  There is no conflict between that holding

and the D.C. Circuit's conclusion in *Modderno* that a service's "mere reference to a particular

impairment or class of impairments, with no use of the statutory concept of disability (or some

close surrogate), is not enough to catapult it into the 'facially discriminatory' category."  82 F.3d

at 1061.

Plaintiff additionally attacks *Modderno* as having been "unsettle[d]" by amendments to

the ADA, because *Modderno*'s purported conclusion that "people with 'mental illnesses' do not

necessarily have statutory disabilities," relies on a now-outdated definition of disability.  Pl.'s

Suppl. at 13.  As an initial matter, if *Modderno* was "unsettled" in this way it was clearly not

fatal; *Modderno* fully recognized that a valid claim did not necessarily need to rely solely on

facial discrimination on the basis of "disability."  82 F.3d at 1061 ("*Alexander*'s refusal to rule

out disparate impact claims under the Act makes such a position impossible.") (citing 469 U.S. at

292–99).  In any event, Plaintiff's fixation on whether the definition of disability has changed

since *Modderno* is a red herring, as Plaintiff never explains how *Modderno*'s definition of

discrimination, in particular the inadequacy of a blanket comparison between mental and

physical services, was ever "unsettled."  *See* Pl.'s Suppl. at 12–13.  It was not.  *See* District's

Suppl. at 9–10.[2]

Finally, Plaintiff makes entirely too much of the fact that *Modderno* addressed a claim of

facial discrimination.  *See* Pl.'s Suppl. at 13–14; *see also* U.S.'s Suppl. 13 n.5.  Whether the

theory of Plaintiff's claim under Title II and Section 504 is labeled facial discrimination,

---

[2]     Furthermore, the amendment in 1992—incorporating "[t]he standards used [in Title I of
the ADA] to determine whether this section has been violated in a complaint alleging
*employment* discrimination"—plainly had no bearing on this *public services* case.  *Modderno*, 82
F.3d at 1063 (quoting Rehabilitation Act Amendments of 1992, Pub.L. No. 102-569, § 506)
(emphasis added).

meaningful access, equal opportunity, methods of administration, reasonable accommodation, or anything else simply does not matter.  Plaintiff's only alleged basis for discrimination is that the District made otherwise neutral public policy choices that allocate one level of service for responding to physical health emergencies and another level of service for responding to mental health crises.  *See* District's Suppl. at 4.  Plaintiff does not allege that the District fails to provide people with mental impairments meaningful access to emergency medical services.  *See generally* Compl.  Plaintiff does not allege that the District fails to provide people with physical impairments meaningful access to mental health services.  *Id*.  Plaintiff does not even allege that the District fails to provide people with some mental impairments meaningful access to mental health services that are available to people with other mental impairments because of their respective disabilities.  *Id*.  Plaintiff merely alleges that the District's response to mental health crises is generally inadequate for anyone experiencing a mental health crisis.  *See* District's Suppl. at 5.  But as noted, *Olmstead* does not hold that a failure to provide any specific standard of care constitutes discrimination.  *See* 527 U.S. at 603 n.14.  And *Modderno* establishes that providing a higher standard of care for one disability than for another is not enough to establish a cognizable discrimination claim in this Circuit.  *See* 82 F.3d at 1060–63.

In short, Plaintiff's attempt to define the benefit underlying its discrimination claim as "rendering emergency responses that are designed to be 'timely and effective'" is too high level and is unsupported by the specific factual allegations in the Complaint.  Pl.'s Supp. at 10.  The problem for Plaintiff is that their goal of having more effective mental health professionals respond to mental health emergencies in the District speaks only to "timely and effective" *mental health* emergency responses, not meaningful access to emergency responses *in general*—a category that also includes police responding to crimes, firefighters responding to fires,

paramedics responding to medical emergencies, and so forth, which have nothing to do with Plaintiff's allegations or its desired relief.  In fact, Plaintiff explicitly *disclaims* such comparisons, by repeatedly emphasizing how different mental health crisis responses are from physical health crisis responses, *e.g.* Compl. ¶¶ 119, 132, let alone from typical policing tactics, *e.g.*, *id*. ¶¶ 45, 53–54, 56.  Ultimately, Plaintiff relies on precisely the kind of generalized comparison between mental and physical care that *Modderno* clearly states it cannot.  *Modderno*, 82 F.3d at 1060–63; *see also Greene*, 2024 WL 1308434 at *16.

### III.   Plaintiff's Definition of Disability Is Inconsequential.

**What is the citation (both statutory/regulatory and in the Complaint) for Plaintiff's contention that many or all individuals experiencing mental-health emergencies qualify as having a "disability" under the ADA and the Rehabilitation Act because they are "regarded as" having a disability?  How, if at all, does that contention affect the analysis in this case?**

Everyone agrees on the citations supporting Plaintiff's contention that many or all individuals experiencing mental-health emergencies have or are regarded as having a disability under the ADA and Rehabilitation Act.  *See* District's Suppl. at 11–12; Pl.'s Suppl. at 15; U.S. Suppl. at 16–17; *cf.* Amicus's Suppl. at 14–16.  And there is general, if not always express, agreement that it does not matter whether Plaintiff is alleging that people experiencing mental health crises have a mental impairment or are simply regarded as having one.  *See* District's Suppl. at 12–14; U.S. Suppl. at 16–18; Pl.'s Suppl. at 19; *cf.* Amicus's Suppl. at 14–18.  The District does not deny that the ADA and Rehabilitation Act's definition of disability is expansive or argue that Plaintiff's allegations fail to identify a population that has qualified disabilities.  *See* Pl.'s Suppl. at 15–22; Amicus's Suppl. at 14–18.  Nothing about the statutory definition of disability suggests that the law treats discrimination against people with "a physical or mental impairment" differently than discrimination against people "being regarded as having such an

impairment."  42 U.S.C. § 12102(1)(A), (C); *see* 29 U.S.C. §§ 705(20) (disability), 794(a)

(discrimination); 42 U.S.C. § 12132 (discrimination).  But whether someone has (or is regarded

as having) a qualifying disability and whether discrimination has occurred on the basis of such a

disability are separate elements of the ADA and Rehabilitation Act analysis.  *See, e.g.*, Paulson,

525 F.3d at 1267; District's Mem. [42-1] at 12 (citing cases).

  Plaintiff's argument that it "can satisfy [the discrimination] element by showing that a

program provides unequal benefits when addressing conditions occurring among people with

actual and/or regarded-as disabilities" simply repackages the arguments made in response to the

Court's previous questions.  Pl.'s Suppl. at 15; *see id.* at 16–22; U.S. Suppl. at 18; Amicus's

Suppl. at 17–18.  At bottom, Plaintiff argues that it has alleged discrimination merely by saying

that different parts of a broad and comprehensive system, responding to different types of

emergencies, provide different standards of care, all of which is predicated on the incorrect

assumption that the well-plead facts of Plaintiff's Compliant identify the District's entire

"emergency response system" as the service at issue.  *Compare id.*, *with* District's Suppl. at 2–

14, *and* Parts I & II above.  But that is not the service at issue.  *See* District's Suppl. at 2–7; Parts

I & II above.  If Plaintiff alleges that many or most people experiencing a mental health crisis

have a mental impairment, its allegations fail to show that the District discriminates against

anyone on the basis of their qualified disability—all will receive the same mental health crisis

response services.  *See, e.g.*, District's Suppl. at 13–14.  And if Plaintiff alleges that all people

experiencing a mental health crisis are regarded as having a mental impairment, its allegations

likewise fail to show that the District discriminates against anyone on the basis of their qualified

disability for the same reason.  *See, e.g.*, District's Suppl. at 14.  Put another way, whether

Plaintiff claims that the relevant population has, is regarded as having, or both has and is

regarded as having a qualified disability does not change the definition of the service at issue, the nature of the discrimination being alleged, or the law applicable to those elements of the claim. Thus, it does not change the Court's analysis, and Plaintiff's claim is subject to dismissal regardless.

**IV.**      **Plaintiff Does Not Identify a Distinct Equal Opportunity Claim.**

> **Is there any case law addressing "equal opportunity" as a distinct type of claim under the ADA and the Rehabilitation Act?**

There also appears to be agreement that meaningful access, equal opportunity, and reasonable accommodation claims are all sides of the same coin. *See* District's Suppl. at 14–17; Pl. Suppl. at 25; U.S.'s Suppl. at 21 & nn.6–7; Amicus's Suppl. at 12 n.39. Even Plaintiff recognizes that in equal opportunity cases, a reasonable accommodation is the remedy for a lack of meaningful access. *See* Pl.'s Suppl. at 25–26; U.S.'s Suppl. at 19–21. No distinction between an equal opportunity claim or any other is found in Plaintiff's uncontroversial conclusion that after establishing that someone has been denied meaningful access to the benefit of a public service by reason of their disability (equal opportunity) they need to show "that there exists a facially reasonable modification that would cure the discriminatory conduct" (reasonable accommodation). Pl.'s Suppl. at 25; *see* U.S.'s Suppl. at 19–21.

Crucially, Plaintiff does not show that the statutory elements of this claim or the legal standards applicable to it are any different from what has already been discussed. *See* Pl.'s Suppl. at 23–25; U.S.'s Suppl. at 19; *cf., e.g., Bragdon v. Abbott*, 524 U.S. 624, 632 (1998) (interpreting the definition of disability); *Civic Ass'n of Deaf of NYC, Inc. v. Giuliani*, 915 F. Supp. 622, 638 (S.D.N.Y. 1996) ("Plaintiffs would be excluded from participation in and denied the benefit of reporting fires from the street if street alarm boxes were removed and no notification alternative put in place."); *P.M. by & through Martine v. City of Winfield*, 2020 WL

10181570, at *5 (finding injunctive relief was unavailable because plaintiff could not establish a risk of future injury).  To the extent that Plaintiff contends that an equal opportunity claim is a distinct claim under the ADA, it provides no support for this proposition.  *See* Pl.'s Suppl. at 26–28 & n.6 (citing Pl.'s Opp'n [47] at 29–30 ("methods of administration")); Amicus Suppl. at 21; *see also* Mot. Hearing Tr. at 23:16–22 (Apr. 30, 2024) (Plaintiff's Counsel: "We're not making a reasonable accommodation claim . . . we're making . . . an equal opportunity claim, and we're making a methods of administration claim.").

Moreover, the District is not at this time asking the Court to dismiss Plaintiff's Complaint based on an affirmative defense or the reasonableness of Plaintiff's aspirational (and undefined) policy proposal.  *See* U.S.'s Suppl. at 22–23; *cf., e.g.*, *Hindel v. Husted*, 875 F.3d 344, 347–48 (6th Cir. 2017) (finding the affirmative defense of fundamental alternation could not be granted "on the basis of the pleadings alone"); *Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 344 (D. Conn. 2008) (finding a fundamental alteration defense to a claim that the most severely mentally disabled residents were being unjustifiably segregated "misleading since what is at stake in this case is somewhat limited").

Quite plainly, Plaintiff asks the Court to order the District to dispatch mental health professionals in response to mental health crises because the District sends medical personnel to respond to physical health crises.  *See* Pl.'s Suppl. at 27–28; Amicus's Suppl. at 22.  But this is not a problem of "equal opportunity."  The relevant question under the ADA and Rehabilitation Act remains whether individuals with mental-health-related disabilities have an equal opportunity to access the same services as individuals without disabilities.  Equal opportunity is not about equality of different services provided to different groups.  Plaintiff's *per se* theory of systemic equal opportunity discrimination is barred by *Modderno* and does not otherwise plead

relief from any "superficial[ly] evenhanded[ ]" legal obligation.  Pl.'s Suppl. at 28; *see McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004) ("[T]he crux of a reasonable accommodation claim is a facially neutral requirement that is consistently enforced."); *cf.* District's Suppl. at 2–14; U.S. Suppl. at 23.

In other words, Plaintiff has not alleged that any of the multiple emergency services that the District provides are denying anyone an equal opportunity to benefit from those services based on the unique needs of their specific disability and the specific circumstances surrounding their crises.  *See* District's Suppl. at 7–11; Part II above.  And Plaintiff does not plead anything more specific about what it thinks the District should be doing and how that would be feasible, helpful, and required by law.  *See* U.S.'s Suppl. at 23; *United States v. Florida*, 682 F. Supp. 3d 1172 (S.D. Fla. 2023) (making extensive *Olmstead* unjustified segregation findings).

## V.   Plaintiff's Proposal to Add Five New Paragraphs to Its Complaint Would Not  Save the Complaint from Dismissal.

**How, if at all, could Plaintiff amend its Complaint to more clearly support its "regarded as" theory of disability or to elaborate on how mental-health services relate to its mission? Defendant need not address this topic until its response.**

The four additional paragraphs that Plaintiff proposes adding to the Complaint to support a "regarded as" theory of disability are irrelevant in light of the general agreement that these amendments are unnecessary.  *Compare* Pl.'s Suppl. at 29–30, *with* Part III above (citing District's Suppl. at 11–12; Pl.'s Suppl. at 15; U.S. Suppl. at 16–17; Amicus's Suppl. at 14–16).  Indeed, these allegations fail to make out a discrimination claim under Title II or Section 504 on their own or in concert with the well-plead facts of Plaintiff's Complaint.  *See* Pl.'s Suppl. at 29–30.  It simply does not matter whether the Court finds Plaintiff alleged an actual disability, a regraded as disability, or both.  *See, e.g.*, Part III above.

19

The fifth and final paragraph regarding Plaintiff's mission is a different story.  The newly added allegations reinforce the previously-plead facts distinguishing mental health crises and services from physical health emergencies and services.  *Compare* District's Suppl. at 2–7, *with* Pl.'s Suppl. at 30.  The additional proposed allegations concerning Plaintiff's mission also highlight the important jurisdictional question—whether Plaintiff has organization standing—following the Supreme Court's intervening decision in *Food and Drug Administration v. Alliance for Hippocratic Medicine* (*AHM*), 602 U.S. 367 (June 13, 2024).  Plaintiff's proposed amendment provides the additional allegation that Plaintiff's clients include "people with mental health disabilities," and details the services that Plaintiff provides—which do not include emergency mental health crisis response.  Pl.'s Suppl. at 30.  But this remains insufficient to confer standing.  *See* District's Mem. [42-1] at 6–11; District's Reply [61] at 1–6.

In *AHM*, the Supreme Court unanimously held that the plaintiffs, a coalition of pro-life doctors and associations, lacked standing to challenge the Food and Drug Administration's relaxation of certain regulations regarding mifepristone, a medication used for abortions.  602 U.S. at 372–74.  In rejecting the *AHM* plaintiffs' theory of organizational standing, the Court held that their claim that the FDA "'impaired' their 'ability to provide services and achieve their organizational missions' . . . does not work to demonstrate standing."  *Id*. at 394.  The Court ruled that a diversion of resources in response to a defendant's actions is insufficient, and organizational standing only exists when the challenged actions "directly affected and interfered with [the plaintiff's] core business activities."  *Id*. at 395. (analogizing this relationship to "a retailer who sues a manufacturer for selling defective goods to the retailer").  Here, the fact that Plaintiff's clients include people with mental health disabilities, or that Plaintiff provides those people various mental health-related services *other* than emergency treatment, says nothing

about how or whether the District's mental crisis response services have concretely injured Plaintiff's "core business activities" themselves.  Independent of all the reasons elaborated above that Plaintiff's claims fail on the merits, this Court should also dismiss the Complaint because Plaintiff lacks standing.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the District's Motion to Dismiss, the Court should dismiss Plaintiff's Complaint.

Date: July 15, 2024

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam P. Daniel*
ADAM P. DANIEL [1048359]
PAMELA A. DISNEY [1601225]
BRENDAN R. HEATH [1619960]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 807-0371
Email: pamela.disney@dc.gov

*Counsel for Defendant District of Columbia*